# E. R. ADAMS *v*. JOHN H. HARRIS, administrator, et al.

1. VENDOR AND VENDEE—JUDGMENT LIEN ON INTEREST OF VENDEE—VENDIBLE UNDER EXECUTION—RIGHTS OF PURCHASER AT EXECUTION SALE.—A judgment against a vendee of land, who holds a bond for the title, having paid part of the purchase money, is a lien on the interest of the vendee in the land, and is vendible under execution, and the purchase at a sale, under such execution, acquires just the interest and right in the land, which the vendee had, at the time of the rendition of the judgment, unaffected by any subsequent encumbrance of the defendant in such judgment.

2. PURCHASER AT SALE OF INTEREST OF VENDEE HOLDING BOND FOR TITLE UNDER PROBATE COURT DECREE ACQUIRES INTEREST OF DECEDENT SUBJECT TO LIENS.—After the death of a vendee of land holding a bond for title, against whom, in his lifetime, a judgment had been rendered, which was a lien from its date on his interest, his administrators sold his interest in the land by order of the probate court. *Held*: the purchaser took subject to the judgment lien, and acquired an equity subject to that which was paramount.

3. DEED BY ADMINISTRATOR WITHOUT ORDER OF COURT VOID.—A deed made by an administrator without an order of the probate court to land which his intestate had obligated himself by bond for title to convey, on payment of the purchase money, is void.

4. VENDOR'S LIEN—BARRED WHEN THE NOTE FOR PURCHASE MONEY IS BARRED BY LIMITATIONS—REVIVAL BY NEW PROMISE.—The vendor's lien is barred, when the note for the purchase money is barred by the statute of limitations. If the vendee still retains the land, he may, by a new note, waive the bar of the statute, for it is simply a personal privilege. But if his interest has passed to third parties, he cannot waive the bar.

5. EQUITABLE TITLE NOT AVAILABLE IN COURT OF LAW.—One who has only an equitable title, cannot go into a court of law.

6. TITLE OF VENDOR BY BOND FOR TITLE ON HIS DEATH DESCENDS TO HIS HEIRS, AND, PERHAPS, THEY COULD NOT BE COMPELLED TO PART WITH TITLE UNTIL PAYMENT OF PURCHASE MONEY, ETC.—Where a vendor of land, who has received part of the purchase money and a note for the remainder, but has not parted with the legal title, dies, the legal title descends to his heirs, and they, notwithstanding the note was barred by the statute of limitations, could not, perhaps, be compelled to part with the legal title, until payment of the remainder of the purchase money.

7. CHANCERY—PARTIES—HEIRS OF DECEASED OBLIGOR FOR TITLE NECESSARY PARTIES TO BILL BY ADMINISTRATOR TO ENFORCE VENDOR'S LIEN.—Where a vendor of land, who has received part of the purchase money and a note for the remainder, but has not parted with the legal title, dies, if his administrator seeks to foreclose the vendor's lien, it is vital to the bill, that the heirs of the vendor be made parties.

8. BILL TO REMOVE CLOUDS FROM TITLE—COMPLAINANT MUST HAVE LEGAL TITLE, OR COMPLETE EQUITY.—The principle is wise which exacts of a complainant, seeking the protection of his title from the clouds and suspicions of adversary claims, that he shall be invested with the legal title, or have such a complete equity, that he can, by force of it, draw to himself the legal title.

9. VENDEE, WHO HAS PAID PART OF THE PURCHASE MONEY, HOLDING BOND FOR TITLE, MAY MAINTAIN INJUNCTION TO PROTECT HIS EQUITY FROM EMBARRASSMENT.—A vendee, who has paid part of the purchase money for land, but has not the legal title, may sustain an injunction against a stranger, who seeks to foreclose a pretended lien, the only effect of which can be to embarrass the equity of the vendee.

APPEAL from the chancery court of Lee county. WHITFIELD, chancellor.

The opinion of the court discloses the features of this case, in their variety, so fully as to render any formal statement here of the facts unnecessary.

*Houston & Reynolds*, for appellants.

I. The complainant is a stranger to the decree sought to be enjoined, not in any manner connected with the facts on which the decree is based, so as to entitle him to the relief sought.

Complainant was not a party to the suit of John H. Harris, administrator, against T. P. Park. If he had been a party, he could have protected his rights, and if the chancery court had decreed adversely to him, he could have appealed to this court. Because he was a stranger, he has the right to prevent by injunctions (his right having accrued after a final decree had been enrolled), any damage which he might sustain by an enforcement of the decree. If he had a title to the property which the decree directs to be sold, and his title accrued after the decree, he may enjoin the sale and prevent a cloud being cast upon his title. Story, Eq. Jur. § 826.

1. Has Adams a title to the property ? The bill avers, that in 1854, Robinson became the owner, and so continued until his death, in 1861. That in 1859, Snoddy & Bransford, in the United States district court, recovered a judgment against Robinson, which was duly enrolled in the county where the lands were situated. That in 1868, this judgment was revived against the heirs of Robinson and Park, terre-tenant in possession, and the lands ordered to be sold and subjected to the payment thereof. That an execution was issued, levied upon the lands, and the same sold and purchased by Adams, who received the marshal's deed.

The deed of the marshal, taken in connection with the precedent proceedings, vested the title to the lands in controversy in Adams.

2. Has Harris, administrator *de bonis non* of G. H. Harris, a lien which can be enforced to the prejudice of Adams' title?

The land was sold by G. H. Harris, in his lifetime, in the year 1854, to William B. Robinson, and one note given for the purchase money, due in 1856, is unpaid. The bill was not filed to enforce the lien of this note, and could not now, as the note is barred by the statute of limitations.

In 1867, one Ashford, as the administrator of Harris, conveyed the land to Park, who executed his note to secure the purchase money, and Harris, the successor of Ashford, as the administrator of G. H. Harris, filed his bill to enforce the pretended lien growing out of the transaction between Ashford, administrator, and Park.

The title to real estate is not vested in an administrator, and his deed, unless in compliance with a decree of the chancery or probate court, is a nullity; if a nullity, there is no vendor's lien. Powers v. Gartman, 29 Miss. 133; Hamilton & Young v. Lockhart, 41 ib. 460.

We have reached the conclusion that Adams has a title to the lands in controversy, and that the administrator of Harris, under the case as made in his bill, has no lien, and we think it follows, that though Adams was a stranger to the suit of Harris' administrator against Park, he has the right to prevent a cloud being cast upon his title by a sale under the decree.

II. Because complainant by his bill seeks to avail himself of the benefit of the statute of limitations, without showing that he is a party interested in the debt which forms the subject matter of the decree sufficiently to entitle him to the benefit thereof.

The cause of demurrer is founded upon a misconcep-

tion of complainant's bill.   The note of Park to Ashford's administrator was made in 1867, and is not barred by the statute of limitations.   It is contended, and the facts stated, show it, that the note was a nullity and the contract out of which it originated, a nullity, and that there was no lien to be enforced.

It is stated in the bill, that the note of Robinson to Harris, made in 1854, was barred by the statute of two years, four years and six years, and if Harris' administrator had commenced proceedings to enforce payment of the note out of the land, Adams could have interposed the defence of the statute of limitations.   Low v. Morris, 18 Cal. 489.  Marshall v. Pooley, 12 La. Ann. 661. Ferguson v. Broome, 1 Brad. (N. Y.) 10.   Shedmore v. Romaine, 2 ib. 122.

As we have already stated, the right of Adams to set up the defence of statute of limitations against the note of Robinson to Harris in a proceeding to enforce the vendor's lien, is not raised in this case.   We are assailing the note of Parks to Harris' administrator, Ashford, not on the ground that it was barred by the state of limitations, but because that as between the parties themselves it created no lien, and if it created a lien as between the parties it could not be enforced to our prejudice, a purchase of Robinson's interest, who was the true owner.

III.  Because complainant shows by his bill, that if he acquired any interest whatever by his purchase, that it is only an equity, and not such as will prevail against the equity of defendant. under and by virtue of the decree sought to be enjoined and the law governing the facts connected therewith.

The judgment of Snoddy and Bransford against Robinson (rendered in 1859) was a lien on the land, though the purchase money had not been fully paid.   Heard v. Baird, 40 Miss. 794; Carpenter v. Bowen, 42 ib. 54; Mullin v. Hargrave, ib.

At the sale under this judgment, Adams acquired just
such interest as Robinson had—a title to the land sub-
ject to the claim of Robinson's vendor for the amount
of unpaid purchase money—but not subject to any lien
which arose out of the contract between Ashford and
Park.

The cause of demurrer admits, that Adams has an
equity, but that the equity of defendants is superior to
it.   But we contend, and have already endeavored to
show, that defendants have no equity—that the founda-
tion of their cause of action was the contract between
Ashford's administrator and Park, and that the con-
tract was a nullity.

IV.  Because complainant does not show by his bill,
that Wm. B. Robinson in his lifetime or his heirs or
representatives after his death were ever vested with
such title in said land as was subject to seizure and sale
under execution at law, or that plaintiff in said judg-
ment acquired any lien on said land by virtue thereof.

As to whether the lands in controversy were subject
to seizure and sale under the execution, and the judg-
ment of Snoddy and Bransford against W. B. Robinson
a lien thereon, is a question which is *res adjudicata.*

This question was settled by the judgment of the dis-
trict court of the United States; that judgment declares
that the lands be sold and subjected to its payment.
To that judgment, Park and the heirs of Robinson were
parties, and they are concluded by it.

Notwithstanding there was a balance due from Rob-
inson of the purchase money, he was vested with such
an interest as was liable to seizure and sale under exe-
cution.   Heard v. Baird, 40 Miss. 794 ; Carpenter v.
Bowen, 42 ib. 54 ; Mullins v. Hargrave, ib.

V.  It was urged in the court below, that an injunc-
tion cannot issue to restrain the execution of a final
decree in equity ; and to travel out of the record, it was
for this reason the demurrer to the bill was sustained.

In reference to pending suits in equity, it is held that their prosecution cannot be restrained by injunction upon original bill, whether filed by a party privy or stranger, and for the reason, the aggrieved party may apply by petition to be made a party to the pending suit, and in that way assert his rights.   Hill. Inj. 255.

The object of complainant's bill was not to enjoin a pending suit, but the enforcement of a final decree.   He could not apply by petition to be made a party, for the suit was ended.   He could not prosecute an appeal, because he was a stranger.   If the final decree is prejudicial to him, he is certainly not remediless.   If its enforcement will cast a cloud upon his title, he may prevent it by injunction.

The rule is, that injunctions may be obtained to stay proceedings in courts of law or equity.   3 Dan. Ch. Pl. and Pr., 1725; Hendrich v. Robinson, 7 Dana, 165; Eden on Injunctions, 9, 10; 2 U. S. Dig. 79, §§ 34, 54.

A decree may be impeached for fraud or imposition. An original bill, in the nature of review, is applicable, when the interest of a party seeking to impeach a decree was not before the court, when the decree was made.   Adams' Eq. 884; Story, Eq. Pl., §§ 426, 428 *a.*

VI. It was contended in the court below, that the bill states that the land was sold under a decree of the probate court, and that Park became the purchaser, and that this decree cannot be impeached collaterally.

To this we answer,

1. That it is not one of the causes of demurrer assigned.

2. That the sale under the decree was made after the rendition of the judgment under which complainant claims title, and of course, the lien of the judgment was not affected by the sale under the decree.

3. But that the lands were subject to sale under, and the lien of the judgment was settled by, the judgment of the district court of the United States.

*Robbins & Allen* and *Green & Pickens,* for appellees.

We contend in the first place, that appellant "has nothing to do with it;" that he is a stranger to this proceedings; that he would have been an improper party to the bill of Harris and Park, and that if he had been made a party to the bill, he could not have set up directly as defence to the suit, that which he is now attempting indirectly. The vendor's lien prevails against the vendee, volunteer purchasers with notice or having an equitable title only, and against a judgment creditor of the vendee. Walton v. Hargroves, 42 Miss. 19, and cases there cited.

Judgment creditors and purchasers at sheriff's sale, deriving rights by operation of law, are not purchasers for a valuable consideration, but in contemplation of a court of equity, mere volunteers. Kelly v. Mills, 41 Miss. 267; ib. 371; Freem. Ch. Rep. 96; S. & M. Ch. Rep. 96; 42 Miss. 26.

A purchaser at sheriff's sale is affected with all the equities which bound the person whose equity he purchased; and in fact is not within the rule which protects a purchaser without notice. Dev. & Bat. 436; Tucker's Com's. B. 2, p. 362 and cases; 2 Baily, (S. C.) 480; 10 Watts, 9; 4 Scam. 486; Colmes v. Farel, 6 S. & M. 190; 5 ib. 710; 11 ib., 21; 7 ib. 586; ib. 513.

Adams (the appellant), who is a purchaser under a judgment against Robinson in favor of Snoddy & Bransford, stands in no better attitude to resist the lien than Snoddy & Bransford, who were judgment creditors, for several reasons. In equity, he being a purchaser at execution sale, is merely a volunteer, and not entitled to the protection extended to innocent purchasers for value, without notice.

Again, Robinson, not having paid out the land, had only an equity in it. Adams by his purchase got only the interest of Robinson, an equity. Then the maxim applies, *"qui prior est tempore potior est juri;"* then,

we' repeat, he is a stranger by blood and estate, and that his rights can in no way be affected by the enforcement of the decree for the purchase money; that he bought only an equity encumbered by an equity, and that his estate is that which is left after the satisfaction of the first equity.

But appellant says that the trade between Park and Ashford, administrators, is void; that the administrator had no right to make any such arrangement. We reply, that an administrator acting in good faith is competent to compromise or renew securities for, or postpone payment of debts due to the intestate, without the sanction of the probate court. Martin et al. v. Farer, admr., 43 Miss. 517.

It no where appears, even, that Ashford did not have the license of the probate court to do what he did; and the *bona fides* of the transaction can not be inquired into by Adams in this collateral way. "It was not his funeral, and he had no right to cry." If there was anything in it, Park might have set it up as a defence; he did not do it; don't let Adams do it for him.

Again, it is admitted that Harris has a lien as against Robinson and his heirs, but contended that the note of Robinson to Harris (which was extinguished by the new note to Ashford) was barred by the statute of limitations. This no where appears in the pleadings, but if it did and the arrangement between Park and Ashford, the administrator, was void, then the defence of the statute of limitation is personal to the administrator. 5 Ala. 402.

But, says appellant, all these questions are *res adjudicata*—settled by the federal court in the case of Snoddy & Bransford v. heirs of Robinson and Park, terre-tenant. Let us see what was settled there. In 1859, the judgment was rendered against Robinson. His death made it necessary to revive the judgment, against his heirs, etc. Now what effect did this revivor

have? It simply gave to the plaintiff the right to issue his execution, which had been suspended by some event (the death of Robinson in this case) between the rendition of the judgment and the issuance of the *scire facias*. This is the whole effect of the revivor—"only this and nothing more." And any attempt by the federal court to displace the lien of Harris when Harris was not before the court, and this too upon *scire facias* to revive a judgment, would be *coram non judice* and void. No such questions could have been determined by that court; none were. 1 Penning. 73; 2 ib. 529.

It will be remembered that Park bought this land under a decree of the probate court of Itawamba county, sold for the payment of Robinson's debts. Appellant now attacks this sale collaterally, and says Park got no title. This can't be done. Voorhees v. Bank, 10 Pet. 449; Cooper v. Reynolds, 10 Wall. 316; 38 Miss. 101, and cases cited.

We ask the attention of the court (especially) to the case of Pounds v. Gartman, 29 Miss. 133. It is as much like this case as "two black eyed peas are like each other."

Can the chancery court enjoin its own decree? In Greenlee v. McDonnell, 4 Ired., (N. C.) it is decided, "that an injunction to restrain the execution of a decree in equity can not be granted." In Jackson v. Leaf, in Jac. and W., Lord Eldon remarked: "I do not remember any instance where this court has enjoined a party from proceeding in another court of equity. In the same court of equity you do restrain them when there are different suits for the same purpose." 2 Paige Ch. 26; Barb. Ch. Pr. 619; 1 Eden on Injunctions, 57, note 2.

*J. A. Brown*, on same side.

The bill is to perpetually enjoin Harris, administrator *de bonis non* of J. G. Harris deceased, from foreclosing a

vendor's lien on a tract of land, upon the ground that it would cast a cloud on Adams' title to said land. Huntington v. Allen, 44 Miss. 654, is a case where Huntington bought land at sheriff's sale. Allen was by an ejectment suit setting up a very questionable title. Huntington, on the ground that the judgment in the ejectment suit would cast a cloud on his title, asked for a perpetual injunction against the suit by Allen. Simrall, J., page 662, says: "He who comes into a court of equity to get rid of a legal title alleged to overshadow his own, must show clearly the validity of his own title and the invalidity of his opponents." In the case at bar, the respondents claim that it does not appear on the face of the bill that Adams has any title to the land, such as will support him in the court of equity, and also that the sale which he seeks to enjoin would not cast such a cloud on any title he may have, as he would have a right to remove. The questions presented to the court on the first branch are: 1st. Did Robinson have such an interest in the land, as that the judgment against him could attach thereto? The bill alleges that Robinson purchased the land from Harris, paying part of the price and giving notes for the rest, the title to be made when the last note was paid. There is no allegation that possession was given or any note or memorandum of the contract signed by either party. 2nd. Did the sale by the administrators of Robinson, of Robinson's interest in this land, by order of court, in preference to personalty, to pay deceased's debts, divest the judgment lien of his creditors? There is no allegation that the money raised by the sale was not open to collection by the judgment creditors, nor that they were not parties to the proceeding. Park certainly paid the money for the land as appears by the bill.

On the second branch, the question is did Park have a right to renew the note of Robinson, and take the lien for purchase money out of the statute of limitations?

The objection raised on the other side that the administrator, Ashford, could not make a deed, is perhaps untrue.

If true, it does not prove that Park could not renew the note, and preserve the lien. The transaction was no doubt thus : Park had bought the interest of the decedent Robinson, subject to the lien for the balance of the purchase money. When the note to secure the same was about to be barred by the statute of limitations, he being unable to pay, renewed the note as a compromise with the administrators of Harris, deceased, and preserved the lien.

The second assignment of error and the last, is that the court refused to allow complainant to amend his bill. By reading the last bill of exceptions in the record, it will be seen that the amendment proposed was to add certain exhibits, which had already been set forth in the bill, and to add them simply as exhibits. No objection had been made to their absence by the demurrer. Terry v. Jones, 44 Miss. 542, by Peyton, C. J., decides, " A bill in equity is pleading, and exhibits are evidence. The demurrer is to the case as presented by the pleading and not to the evidence filed for its support. Where a bill in equity is substantially defective for want of proper averments, it cannot be eked out by exhibits. It must stand or fall on its own averments." So that if these exhibits had been in they would not have altered the result, their absence did not weaken the bill, and their addition would make it no stronger on a second demurrer.

We ask an affirmance of the judgment, sustaining the demurrer and dismissing the complainants bill of complaint.

Simrall, J.:

The case is this: In 1854, William B. Robinson purchased from John G. Harris, now deceased, the parcel of land in dispute, for the price of $1,800,

one-third paid in cash, the balance on a credit of one and two years, for which Robinson made his promissory notes in an equal amount at one and two years. The first note has been paid. Robinson died in 1861, leaving the last note unpaid.' One Archy Thomason was appointed administrator who gave notice to creditors to present their claims. John G. Harris, the vendor to Robinson, has long since deceased, of whose estate one J. H. Harris is administrator. The last note for the land was never probated nor registered by Harris' administrator, nor were any steps taken to collect the same within four years after grant of administration, deducting the statutory suspension of the acts of limitations, of also the suspension during the late war, nor was suit brought within six years from the maturity of the note, deducting the like suspensions. Thomason, the administrator of Robinson, sold the land under probate decree, when Park became purchaser. After Park's purchase, in 1867, he took from one N. E. Ashford, then administrator *de bonis non* of John G. Harris deceased, the vendor of Robinson, a deed to the land, and gave to Ashford therefor his note for $600 due one day after date. Harris' administrator in March, 1871, filed a bill in chancery against Park, setting up a vendors' lien on the land as security for the note which afterwards went into a decree. That decree was about being executed, when Adams, the appellant, filed a bill enjoining the sale, insisting upon a perpetual injunction, and that Park's title be canceled, as being invalid against him, and casting a cloud upon his title.

Adams claims title as follows: In 1859, Snoddy & Bransford recovered a judgment in the United States district court for the northern district of Mississippi at 'Pontotoc, against W. B. Robinson for $700. That in 1868 a *scire facias* was sued out against the heirs and terre-tenants, which was served on Parks and the heirs of Robinson, and that judgment of review was had, and

also that the land be sold.　At the sale Adams, became the purchaser.

To this bill Parks demurred, which was sustained, and the bill dismissed.

Robinson, by his purchase in 1854, from Jno. G. Harris, acquired an equitable title merely—the latter retaining the legal title as security for the unpaid purchase money.　But the judgment of Snoddy & Bransford was a lien, from the date of its rendition, upon his interest in the land to the extent of his title.　This is wrought by the statute which subjects equitable interest in lands to judgments.　40 Miss. 794; Carpenter v. Bowen, 42 ib., 54; Walton v. Hargrove, 42 ib. 24; Code, 1857, art. 12, p. 308, which provides that "Estates of any kind, holden or possessed in trust for another, shall be subject to the debts of the *cestui que trust,* whether such trusts be fully executed or not."　The cases cited go also to the point that the lien of the judgment and a sale under it bind and pass whatever interest the debtor had in the property.　Robinson held the equitable title, the legal title being outstanding in Harris as a trustee for his use.　The trust would not be fully executed until final payment of the purchase money, when Robinson would have a right to demand the complete title.　Adams, as purchaser under the judgment, accepted the precise interest in the land which Robinson, the judgment debtor, had.　He was substituted by assignment to his position and equity.　That is—upon payment of the residue of the debt to Harris he could demand a conveyance of the legal title.　This purchase placed him in the same relations to Harris, the vendor, which Robinson had sustained.　He had this further advantage—that the lien of the judgment, would be effectual to overcome any conveyance or lien subsequent to the date of the judgment, so as to make his title take effect as of the date of the judgment,

whether these liens were made or suffered, by Robinson, or a privy in blood or representation.

The bill is vague and obscure in the allegations respecting the sale of the land by Thomason, administrator of W. B. Robinson, at which sale Parks became purchaser and went into possession. It is not alleged when this sale was made, or for what price. It is evident, however, that it did not and could not withdraw the land from the operation of the judgment-lien, nor could it defeat the title which would be transferred by the sheriff's deed under the judgment. The utmost effect would be to convey the land to Parks subject to the judgment-lien.

The deed made by Ashford, administrator *de bonis non* of Jno. G. Harris, deceased, to Parks, in February, 1867, was inoperative and void. The title had descended to the heirs of Harris, and was not in his administrator. Art. 137, Code, 1857, p. 458, in the circumstances therein mentioned (when land has been sold and a title bond, or other agreement to make title has been given), allows the vendee to petition the probate court, which granted the letters of administration, for an order on the administrator to make the title; and on summons to all parties interested, the court, if satisfied that the title should be made, shall so order.   *   *   *   This article seems to assume that if the purchase money has been paid, and nothing remains to be done to complete performance except a conveyance of the title, then the probate court shall have jurisdiction to order the administrator or the executor to make title. But Ashford, as administrator, did not pursue this statute, nor was the deed made by virtue of a probate order; nor was the note given by Parks of avail to revive the vendor's lien so as to impair or defeat any adverse interest or title which had accrued to a third person. The statute of limitations is generally a personal privilege which may be pleaded or waived at the pleasure of the debtor. He

may always waive it as respects his personal debts, and also as respects liens on property which he still owns. But if the property upon which, as debtor, he has placed a lien is aliened by him or persons beyond his control, it would be unjust in him, when he no longer has an interest in the property, to interfere and by a personal act, such as a waiver of the bar, or a new promise, give an advantage to one person over another. By such acts he may bind himself or his own property, but would not be tolerated to intefere as between other adversary lien claimants. Such revivals or new promises can not be permitted to affect previously acquired liens, or interests as respects the property itself. Thomas Christian v. O'Neal et al. (MSS. opinion); Brown v. Moore, 26 Ill. 425; Lord v. Morris, 18 Cal. 490.

Parks, who, under his deed from Harris' administrator, claimed to have succeeded to the title of Harris, vendor of Robinson, stood as an adversary to Adams, who purchased under the judgment against Robinson. Adams was substituted, as we have said, to Robinson's position and title. If the vendor's lien was barred as against Robinson, Adams could set up that plea, as succeeding to his rights. If Robinson had been living at the time of Adams' purchase from the sheriff, that sale having transferred all his interest in the land, he could not, by a new promise, revive or extend the lien, against the land. If he could not do so, to the prejudice of Adams, neither would his heirs or legal representatives.

Adams having only an equitable title, can not go into a court of law. Parks by his purchase under the probate decree, acquired a title which was subject to be divested by the paramount lien of the judgment. Parks, perhaps, recognizing this inferiority, attempted to bring to his aid, the equity of Harris, the original vendor to Robinson, and thereby acquire a title superior to any that would be derived through Robinson, his vendee. But as we have seen, the deed of the administrator of

Harris, was inoperative to transfer the legal title. The note given by Parks to the administrator of Harris, for the original unpaid purchase money, could not, by the conjoint effect of the deed and note, create a lien to the prejudice of Adams. Perhaps, if Parks had paid off the debt to Harris' estate, he might set up a right to be subrogated to the lien which he had extinguished, and would be entitled to its benefits as against Adams; but that is not his attitude according to the averments of the bill.

According to the view which we have of the rights of the parties, the legal title is still outstanding in the heirs of Harris, the original vendor. The deed of his administrator being inoperative to pass that title, both Adams and Parks are holders of equitable titles, derived from Robinson, the vendee of Harris—the former claiming under the purchase at the sheriff's sale, the latter under the probate sale. As respects these equitable notes, Adams is the superior and better. But whether the estate of Harris has lost the benefit of the vender's lien or not, as against the land, we do not undertake to decide, in view of the fact that the title is in his heirs, and they could not perhaps be compelled to part with the legal title until payment of the purchase money, on the principle that a party seeking equity, must himself do equity. The heirs of Harris not being parties to the foreclosure suit, the legal title could not be controverted and disposed of in their absence from the record. Nor should the equitable title of Adams be embarrassed in that suit. He is a necessary party to a suit foreclosing the vendor's lien. We understand the averments of the bill to be, that the administrator of Harris sought by his bill to foreclose the lien supposed to result from his deed to Parks, and Parks' note to him as administrator. No such result as that ensued from that transaction. The lien may exist, growing out of the sale of the intestate Harris to Rob-

inson, for the unpaid part of the debt.   To foreclose that
lien, it is vital that the heirs should be parties, (is held
by us at this term.)   It would be inequitable to Adams
to embarrass the title by a proceeding to which he was
a stranger, as also the heirs of the vendor.   If, upon a
sale, the property should bring more than the lien debt,
to whom would the surplus go, to Adams, or to Parks ?

Inasmuch as Parks has not acquired a legal title, but
has an opposing equity to Adams—and inasmuch as a
sale under the decree would not be conclusive upon
Adams, and because the heirs of Harris were not par-
ties, we think in the peculiar circumstances of the
case, that the execution of the foreclosure decree should
be held up, and that the heirs of Parks should be made
parties, so that all persons in interest may be brought
before the court, and a decree made that will be con-
clusive upon all parties.   This is necessary in order that
a good title may be offered to purchasers, and it is also
necessary in order to settle who shall be entitled to the
surplus.

The reflection given to the subject has brought us to
the opinion that Adams (aside from the vendor's lien),
has a superior equity to Parks, that lien may be para-
mount to both of their claims, but ought not to be
enforced, except by decree conclusive upon each of their
equities.

We recognize also the wisdom of the principle, which
exacts of a complainant seeking the protection of his
title from the clouds and suspicions of adversary claims,
that he should be invested with the legal title, or have
such a complete equity, that he could - per force of it,
draw to himself the legal title. The bill therefore, could
not be maintained as a *quia timet* bill, to displace and
cancel shadowy claims.   But the averments disclose an
effort to foreclose the vendor's lien, which would utterly
fail to pass the legal title, and which would greatly
embarrass the rights which others, not parties to that

suit, assert. We are disposed therefore, to treat the complainant's bill as an injunction suit, restraining the execution of a decree, the only effect of which would be to becloud the title, and embarrass and complicate rights, which would require further litigation to clear up. In this view of the whole subject, we think that the right will be better vindicated by restraining Harris' administrator from further proceedings under his decree, so that all persons asserting a right to the property may be brought before the court. Upon return of the case to the chancery court, the heirs of Harris will be made defendants. Those competent to assert the vendor's lien, (where the legal title has been retained,) will be before the court. Adams and Parks can also vindicate their respective equities, and a decree made which will do complete justice.

Decree reversed and cause remanded, and leave given to complainant to amend his bill.