[No. 33288. Department Two. September 1, 1955.]

PIERCE COUNTY, *Petitioner*, v. HOMER F. KING *et al.*, *Appellants*, CLARENCE R. POTTER *et al.*, *Respondents*.[1]

[1] Reported in 287 P. (2d) 316.

Leo *Teats* and *Ralph Teats,* for appellants.

*J. Peter P. Healy,* for respondents.

FINLEY, J.—Mr. and Mrs. Potter were the owners of lots three and four in Block 1012, Map of New Tacoma. On June 1, 1951, they agreed to sell the premises to Mr. and Mrs. King. The contract provided for a purchase price of eighteen thousand dollars, payable three thousand dollars down, and the balance in monthly installments of one hundred dollars, and no more, plus interest on the balance at the rate of five per cent per annum. The contract contained a forfeiture clause and time was made of the essence. The vendees agreed to keep the premises insured and to pay all the taxes and assessments thereon. Further, the risk of damages or destruction of the improvements on the premises was to be borne by the vendees, who were under a duty to continue their payments under the contract, irrespective of damage or destruction of the improvements. The contract contained a *printed* nonassignability clause, which read:

"And it is further agreed. That no assignment of this agreement, or of the premises above described, shall be valid unless the same shall be endorsed hereon or permanently attached hereto and countersigned by the seller, and no agreement or condition or relation between the buyer

and his assignee, or any other person, acquiring title or interest from or through him shall preclude the seller from the right to convey the premises to the buyer or his assigns, on the payment of the unpaid portion of the purchase money which may be due to the seller."

The contract also contained the following *typewritten* provision:

"Neither this contract, nor the lands covered by it, shall be sold nor transferred by the buyer herein, without the balance of the principal sum, and the interest to the end of the contract period, being paid in full, to the seller herein."

The contract did not provide for the event of the taking of the property by eminent domain. The contract was not filed of record.

The vendees entered into possession of the premises and operated a business thereon. They fully performed all of their duties under the contract until April 13, 1954, when Pierce county filed a petition to condemn all of blocks 1012 and 1013, Map of New Tacoma, which included the two lots, subject matter of the above-mentioned contract. The petition named the vendors and also the vendees as parties to the proceedings. Negotiations between the parties ensued, which led to an agreement. On November 15, 1954, a stipulation was entered into between Pierce county, the vendors, and the vendees, whereby the county agreed to pay twenty-one thousand dollars for the premises. On December 3, 1954, judgment was entered upon the stipulation, condemning the property. The sum of twenty-one thousand dollars was deposited with the registry of the Pierce county superior court.

The vendors and vendees stipulated that the vendors were definitely entitled to the balance of the purchase price ($10,700), and that the vendees were definitely entitled to the sum of $7,892.48. The difference between the whole condemnation award ($21,000) and the sum of stipulated shares of the vendors and vendees ($18,592.48) represents the interest at five per cent per annum on the balance of the purchase price for the remaining life of the contract. This sum of $2,407.52 is the subject matter of the present action.

On December 10, 1954, the vendees filed a petition for distribution of the condemnation award, previously paid into court. The claim of the vendors was based on the above-quoted sale or assignment provision of the contract. The vendors argued that the condemnation constituted a sale within the meaning of the particular provision of the contract, that the sale, in effect, was made by the vendees, and, consequently, that they (vendors) were entitled not only to the balance due, but to the interest calculated at five per cent for the remainder of the contract period. The trial court awarded the interest in the amount claimed to the vendors. This appeal by the vendees followed.

Condemnation proceedings by counties are governed by Laws of 1949, chapter 79 [*cf.* RCW 8.08]. The statute provides for the parties necessary in such proceedings, Laws of 1949, chapter 79, § 1, p. 177 [*cf.* RCW 8.08.010], and reads in part as follows:

"Whenever the Board of County Commissioners deems it necessary for county purposes to acquire such land, real estate, premises or other property, and is unable to agree with the owner or owners thereof for its purchase, it shall be the duty of the Prosecuting Attorney to present to the Superior Court of the county in which said land, real estate, premises, or other property so sought to be acquired or appropriated shall be situated, a petition in which the land, real estate, premises, or other property sought to be appropriated shall be described with reasonable certainty, and setting forth the name of each and every owner, encumbrancer, or *other person or party interested in the same*, or any part thereof, so far as the same can be ascertained from the public records, the object for which the land is sought to be appropriated, and praying that a jury be impaneled to ascertain and determine the compensation to be made in money to such owner or owners respectively, and to all tenants, encumbrancers, or *others interested*, for taking such lands, real estate, premises, or other property, . . . ." (Italics ours.)

We hold that, under the above statute, a vendee in possession under an executory contract is included within the meaning of terms, "other person or party interested," and is a necessary and proper party to condemnation pro-

ceedings. *Schaefer v. E. F. Gregory Co.*, 112 Wash. 408, 192 Pac. 968, has been distinguished and explained in cases decided thereafter, and is no longer controlling.

The question of the allocation of the risk of loss as between vendor and vendee in condemnation (eminent domain) proceedings, involving real estate covered by an executory contract, has never been resolved by this court. Previous cases have dealt with certain aspects of the problem, but the basic question of where the risk of loss should fall has not been passed upon by this court. Authorities in other jurisdictions are in conflict with the majority imposing the risk on the vendee in possession; see 46 A. L. R. 818; 67 A. L. R. 1104; 21 A. L. R. (2d) 794; 2 Nichols on Eminent Domain 27, § 5.21 [1], (3d ed., 1950); 3 Corbin on Contracts 665, § 671.

In considering the problem, our attention has been directed to the uniform vendor and purchaser risk act, as found in 9A Uniform Laws Annotated 358, § 1 (b), which provides:

"(b) If, when either the legal title or the possession of the subject matter of the contract has been transferred, all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid."

While this statute is not in force in this state, the rule it announces is definite and easily applied. It has been held to be merely declaratory of pre-existing case law. *World Exhibit Corp. v. City Bank Farmers Trust Co.*, 270 App. Div. 654, 61 N. Y. S. (2d) 889, affirmed 296 N. Y. 586, 68 N. E. (2d) 876.

We hold that the appellants, as vendees in possession, must bear the risk of the property being taken in eminent domain proceedings; that vendees could not have elected (a) to rescind the contract, and (b) to obtain a restitution of their payments. This leads to the question of distribution of the condemnation award paid into court in the instant case, as mentioned hereinbefore. As said by this court in *North Coast R. Co. v. Hess*, 56 Wash. 335, 105 Pac.

853, the sum paid into the registry of court represents the land itself and must be distributed among those having an interest in the land in accordance with their claims. The power of the court to distribute the fund between rival claimants is not only statutory, but is a matter of general equity. *Pacific Nat. Bank of Seattle v. Bremerton Bridge Co.*, 2 Wn. (2d) 52, 97 P. (2d) 162.

The respondents' claim is based upon the typewritten provision of the contract, mentioned and quoted above, relative to a sale or assignment of the vendees' interest, and upon the case of *American Creameries Co. v. Armour & Co.*, 149 Wash. 690, 271 Pac. 896, where this court held that a condemnation was a "sale" within the provisions of a lease. It may be useful for some purposes to regard a condemnation as a forced sale, but the two types of transactions certainly are not identical in all respects, since the element of mutual assent is missing in a condemnation, where any so-called "sale" is compelled by the exercise of the sovereign power of eminent domain. In *United States v. 150.29 Acres of Land*, 148 F. (2d) 33, 36, certiorari denied, 325 U. S. 882, 89 L. Ed. 1998, 65 S. Ct. 1576, the court had to construe a lease, and, after citation of authority, including *American Creameries Co. v. Armour & Co., supra*, said:

"Indeed a proceeding to condemn is a proceeding to bring about a forced and compulsory sale of property by its owner. Standing alone and unaffected by other provisions of the lease in question, the construction placed on this clause by appellant might reasonably be accepted; but *under the circumstances with which we are here confronted, the matter is not that simple.* The job at hand requires a construction of the lease as a whole and an interpretation of the purposes of the parties to the lease." (Italics ours.)

The parties agree between themselves that the two paragraphs of the contract, set out above, should be construed together. The meaning of the provisions is not crystal clear to us. The nonassignability clause provides, in very inept language, that an assignment of the contract by the buyer must be approved in writing by the seller. The typewritten clause provides for a penalty in the case of an as-

signment by the buyer not assented to by the seller. We are convinced that the use of the word *sale* in the contract provision is not controlling in the case at bar. A condemnation by the county, the sellers being a party to the proceedings, cannot be construed as an assignment by the purchaser not approved by the seller. Thus, without expressing any opinion as to the soundness of the rule announced in *American Creameries Co. v. Armour & Co., supra,* we think it inapplicable to the present case.

■ On the other hand, the respondents, vendors, have executed a contract with no acceleration clause. Under the contract, they would have had an ascertainable monthly income for a number of years. In so far as compatible with the circumstances, they should be entitled to the benefit of their bargain. In *John Hancock Mut. Life Ins. Co. v. Casey,* 147 F. (2d) 762, 766, the court was faced with the problem of allocation as between mortgagor and mortgagee of payments made by the United States government on the mortgaged premises which were condemned for a term of years. The court said:

"Though we have found no controlling authority on the point, in the circumstances of this case it would not, in our opinion, be 'just and equitable' to disburse to the mortgagee the whole of each successive annual deposit by the United States for as long as any part of the mortgage debt remains outstanding. This would deprive the debtor of income from the property for an indefinite number of years and would result in paying off the mortgage debt at an accelerated rate. The debtor here has contracted for a long-term financing, with no provision for acceleration in the event of a default in payment of interest or principal installments, and is entitled to the benefit of its bargain so long as the security rights of the mortgagee have not been substantially impaired."

If the vendors receive in a lump sum the balance due under the executory contract, they should, of course, be able to reinvest it and to earn interest thereon. However, even prudent investment could earn less than the contract would have given them.

We think that the vendors should be permitted to elect

either (a) to take the balance of the purchase price ($10,-700) in a lump sum, and no more, or (b) to leave such sum in the registry of the court, together with the disputed interest ($2,407.52), and to be paid one hundred dollars per month, plus interest at the contract rate on the balance, until the entire sum is thus disbursed.

The judgment of the trial court shall be modified in accordance with the views expressed herein. The parties shall bear their own costs in this appeal. It is so ordered.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.

---

October 17, 1955. Petition for rehearing denied.