[No. 43812. En Banc. July 14, 1977.]

CASCADE SECURITY BANK, *Appellant,* v. FREDERICK M. BUTLER, ET AL, *Defendants,* W. J. RINGWOOD, ET AL, *Respondents.*

*Hawkins & Ingalls,* by *Jack A. Hawkins* (*Donald G. Ryan, Jr.,* and *Thomas P. Giere,* of counsel), for appellant.

*Collins & Hansen,* by *Clifton W. Collins,* for respondents.

*John A. Strait, George R. Nock,* and *John William Weaver* on behalf of University of Puget Sound School of Law and *W. E. Evenson* on behalf of Washington Land Title Association, amici curiae.

BRACHTENBACH, J.—The issue here is whether the interest of a real estate contract purchaser constitutes "real estate" within the meaning of the judgment lien statutes, RCW 4.56.190 and 4.56.200. Those statutes provide:

RCW 4.56.190:

> The *real estate* of any judgment debtor, and such as he may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the district court of the United States rendered in this state, any judgment of the supreme court, court of appeals, or superior court of this state, and any judgment of any justice of the peace rendered in this state, and every such judgment shall be a lien thereupon to commence as hereinafter provided and to run for a period of not to exceed six years from the day on which such judgment was rendered: *Provided, however,* That any such judgment rendered upon a contract made prior to the ninth day of June, 1897, any judgment upon, or reviving or continuing such judgment, and any revival thereof, shall cease to be a lien upon the *real estate* of the judgment debtor at the end of five years from the rendition thereof, and in case of an appeal from any such judgment of the superior court, the date of the final judgment in the supreme court or court of appeals shall be the time from which said five years shall commence to run. Personal property of the judgment debtor shall be held. only from the time it is actually levied upon.

(Italics ours.)

RCW 4.56.200:

> The lien of judgments upon the *real estate* of the judgment debtor shall commence as follows:
>
> (1) Judgments of the district court of the United States rendered in the county in which the *real estate* of the judgment debtor is situated, and judgments of the superior court for the county in which the *real estate* of the judgment debtor is situated, from the time of the entry thereof;
>
> (2) Judgments of the district court of the United States rendered in any county in this state other than that in which the *real estate* of the judgment debtor to be affected is situated, judgments of the supreme court of this state, judgments of the court of appeals of this state,

and judgments of the superior court for any county other than that in which the *real estate* of the judgment debtor to be affected is situated, from the time of the filing of a duly certified abstract of such judgment with the county clerk of the county in which the *real estate* of the judgment debtor to be affected is situated, as provided in this act;

(3) Judgments of a justice of peace rendered in the county in which the *real estate* of the judgment debtor is situated, from the time of the filing of a duly certified transcript of the docket of the justice of the peace with the county clerk of the county in which such judgment was rendered, and upon such filing said judgment shall become to all intents and purposes a judgment of the superior court for said county; and

(4) Judgments of a justice of the peace rendered in any other county in this state than that in which the *real estate* of the judgment debtor to be affected is situated, a transcript of the docket of which has been filed with the county clerk of the county where such judgment was rendered, from the time of filing, with the county clerk of the county in which the *real estate* of the judgment debtor to be affected is situated, of a duly certified abstract of the record of said judgment in the office of the county clerk of the county in which the certified transcript of the docket of said judgment of said justice of the peace was originally filed.

(Italics ours.)

We hold, prospectively, that judgments are liens upon the interest of a real estate contract purchaser within the meaning of those statutes. This holding, at long last, constitutes the demise of *Ashford v. Reese,* 132 Wash. 649, 233 P. 29 (1925).

The facts are that in 1968 the judgment debtors (defendants) became contract vendees of real estate. In March of 1973 the plaintiff obtained a judgment against those vendees–defendants who were then in possession of the property with their contract in good standing. Ten days later, for good consideration, the vendees' interest was assigned to third parties who are not involved here. Some months later the then vendees–assignees assigned their interest to the

respondent–intervenors, who are now the holders of the contract vendees' interest. Almost a year after the present contract vendees–respondent intervenors acquired all of the vendees' interest in the contract, the judgment creditor-plaintiff applied for a writ of execution on the judgment and against the vendees' interest. The sheriff executed and published notice of sale. The respondents intervened. The trial court granted their motion for summary judgment and enjoined the sale.

The trial court based its decision in favor of the contract vendees upon *Ashford v. Reese, supra,* wherein we said at page 650:

[A]n executory contract of sale in this state conveys no title or interest, either legal or equitable, to the vendee . . .

█ If the holding of *Ashford v. Reese, supra,* were still the law, the contract vendee did not hold a real estate interest within the scope of the judgment lien statute. It would follow that the judgment debtor's interest was not subjected to the automatic lien when the judgment was entered and, because the debtor's interest had been assigned to another before execution, that interest was free from the lien. We overrule *Ashford v. Reese, supra,* but only prospectively, and therefore affirm.

From its inception the doctrine of *Ashford v. Reese, supra,* has been criticized. Schweppe, *Rights of a Vendee Under an Executory Forfeitable Contract for the Purchase of Real Estate: A Further Word on the Washington Law,* 2 Wash. L. Rev. 1 (1926); Oles, *The Vendor–Purchaser Relationship in Washington,* 22 Wash. L. Rev. 110 (1947). Despite our failure to specifically overrule *Ashford,* we have distinguished it in so many ways that its sweeping language has become virtually meaningless.

We have identified the vendee's interest as "substantial rights", as a "valid and subsisting interest in property", as a "claim or lien" on the land and as rights "annexed to and are exercisable with reference to the land." *Oliver v. McEachran,* 149 Wash. 433, 438, 271 P. 93 (1928); *Griffith*

*v. Whittier,* 37 Wn.2d 351, 353, 223 P.2d 1062 (1950); *Daniels v. Fossas,* 152 Wash. 516, 518, 278 P. 412 (1929); *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 12, 280 P. 350 (1929).

These characterizations are patently at odds with the *Ashford* language. Additionally, we have held the vendee to have certain rights totally inconsistent with the concept that a vendee has no title or interest, legal or equitable. For example, we have held that: a vendee may contest a suit to quiet title, *Turpen v. Johnson,* 26 Wn.2d 716, 175 P.2d 495 (1946); under the traditional land sale contract, the vendee has the right to possession of the land, the right to control the land, and the right to grow and harvest crops thereon, *State ex rel. Oatey Orchard Co. v. Superior Court, supra;* a vendee has the right to sue for trespass, *Lawson v. Helmich,* 20 Wn.2d 167, 146 P.2d 537, 151 A.L.R. 930 (1944); a vendee has the right to sue to enjoin construction of a fence, *Kateiva v. Snyder,* 143 Wash. 172, 254 P. 857 (1927); a vendee's interest constitutes a mortgageable interest, *Kendrick v. Davis,* 75 Wn.2d 456, 452 P.2d 222 (1969); a vendee is a necessary and proper party for purposes of a condemnation proceeding, *Pierce County v. King,* 47 Wn.2d 328, 287 P.2d 316 (1955); a vendor's interest for inheritance tax purposes is personal property, *In re Estate of Eilermann,* 179 Wash. 15, 35 P.2d 763 (1934); a vendor's interest for purposes of succession and administration is personal property, *In re Estate of Fields,* 141 Wash. 526, 252 P. 534 (1927); a vendee may claim a homestead in real property, *Desmond v. Shotwell,* 142 Wash. 187, 252 P. 692 (1927); a vendee is a real property owner for attachment purposes, *State ex rel. Oatey Orchard Co. v. Superior Court, supra* at 11–12.

Specifically we here hold that a real estate contract vendee's interest is "real estate" within the meaning of the judgment lien statute. Other jurisdictions have so held, for example, *Mutual Bldg. & Loan Ass'n v. Collins,* 85 N.M. 706, 516 P.2d 677 (1973); and *Fridley v. Munson,* 46 S.D. 532, 194 N.W. 840, 30 A.L.R. 501 (1923).

■ We are urged to embrace the doctrine of equitable conversion as the proper characterization of the respective interests of the vendor and vendee. That is a theory by which the vendee's interest is at once converted into real property and the vendor's interest is strictly personal property. It is premised upon the maxim that equity regards that as done which ought to be done. 2 S. Spencer, *Pomeroy's Equity Jurisprudence* §§ 370–72, at 31–33 (5th ed. 1941). To adopt that doctrine would merely substitute a new set of uncertainty for the confusion which has followed *Ashford.*

It is true that many jurisdictions have adopted it. It cuts a wide swath for it is deemed applicable to contracts, devolution, wills and trusts. 27 Am. Jur. 2d *Equitable Conversion* § 3 (1966). It is the uncertainty of the doctrine which is of concern to us. Its application theoretically depends upon the intent of the parties. *Parr–Richmond Indus. Corp. v. Boyd,* 43 Cal. 2d 157, 272 P.2d 16 (1954); *Atkinson v. Van Echaute,* 236 Ark. 423, 366 S.W.2d 273 (1963). Some states do not favor it. *In re Shareff's Estate,* 143 Pa. Super. 465, 17 A.2d 623 (1941). Its nebulous character is evidenced by those decisions which hold that it applies only when necessity and justice require it, or that it applies only to the extent necessary to accomplish equity. *National Bank v. Saia,* 154 Kan. 740, 121 P.2d 251, 138 A.L.R. 1290 (1942); *Chicago v. Salinger,* 384 Ill. 515, 52 N.E.2d 184, 154 A.L.R. 1104 (1943). It has been held that the parties may contract away application of the doctrine. *Eade v. Brownlee,* 29 Ill. 2d 214, 193 N.E.2d 786 (1963).

Wisconsin has applied the doctrine for more than a century. After an analysis of that jurisdiction's case law, a law review writer concluded:

In Wisconsin, the doctrine seems to have served more to confuse than to clarify the law.

. . . [T]he history of equitable conversion in Wisconsin indicates that perhaps the law would be simpler and clearer, as well as more responsive to the individual

issues and policies raised in each case, if reference to the doctrine were eliminated altogether.

Church, *Equitable Conversion in Wisconsin,* 1970 Wis. L. Rev. 404, 429.

The eminent Dean (and later Chief Justice) Harlan F. Stone has said:

> Most of the difficulties and perplexities which attend the disposition of rights arising under contracts from the sale of land would never have risen had this fiction never been invented.

Stone, *Equitable Conversion by Contract,* 13 Colum. L. Rev. 369, 388 (1913).

To base our decision upon this fiction would embark us upon a case–by–case determination of the boundaries of the doctrine in this state. Rather we are content to limit ourselves to the pertinent issue at hand which is to overrule *Ashford v. Reese, supra,* and declare that a vendee's interest is real estate within the meaning of the judgment lien statutes. It is apparent from our many cases cited above that we have defined and classified the interest of vendors and vendees for a variety of purposes. That body of case law is based upon a realistic examination of the nature of the interest in a particular context. We need not adopt a fiction to buttress the rationale of those cases or the present one.

The remaining question is whether our decision should have a retroactive effect. Some courts give the prevailing party the benefit of his own lawsuit and apply the decision to the parties in the overruling case. *See, e.g., Darling v. Charleston Community Memorial Hosp.,* 33 Ill. 2d 326, 211 N.E.2d 253 (1965). The prevailing party is rewarded for his effort and expense in challenging the old rule and providing the court with an opportunity to overturn it. *Comment Note—Prospective or Retroactive Operation of Overruling Decision,* Annot., 10 A.L.R.3d 1371, 1401 (1966). However, retroactive application of the decision may result in substantial hardships to the parties who have relied in good faith on the rule. *Geise v. Lee,* 10 Wn.

App. 728, 519 P.2d 1005 (1974), *rev'd on other grounds,* 84 Wn.2d 866, 529 P.2d 1054 (1975). Appellate courts possess the power to give their decisions prospective effect, *i.e.,* not to apply the decision to the parties in the overruling case. *State ex rel. State Fin. Comm. v. Martin,* 62 Wn.2d 645, 384 P.2d 833 (1963); *Linkletter v. Walker,* 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965); *Bassi v. Langloss,* 22 Ill. 2d 190, 174 N.E.2d 682 (1961). Prospective application minimizes or eliminates the hardships of an overruling decision. *Geise v. Lee, supra.*

In the present case, respondents acquired Alvena Butler's vendee interest under a purchasers' assignment of contract and deed. If this decision applies, respondents will be required to satisfy appellant's judgment against defendants. They will still owe the contract balance to the vendors and, at best, might have a claim over against their assignor. Respondents were entitled to rely upon *Ashford v. Reese, supra,* when they executed their contract for sale with Alvena Butler. Their title search did not reflect any outstanding liens on the property. To apply our decision to the parties would defeat respondents' reliance interest and cause them considerable financial loss. We refuse to allow our decision to operate on the parties in this appeal. Thus, appellants do not possess a judgment lien upon the real property.

We usually determine the general or unlimited retroactive effect of our overruling decisions only when the question arises in subsequent cases. *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 452, 546 P.2d 81 (1976) (Stafford, C.J., dissenting in part, concurring in part). However, in order to eliminate uncertainty, confusion, and conflicting lower court decisions, we must clarify the retroactive effect of our decision. Additionally, the parties and amici, who include the Washington Land Title Association, fully briefed the retroactivity issue.

In determining the general or unlimited retroactive effect of an overruling decision, courts also customarily focus on whether particular persons have relied justifiably upon the

overruled decision. If so, the court must ascertain whether a retroactive application of the overruling decision would defeat these reliance interests. *Geise v. Lee, supra; Taskett v. KING Broadcasting Co., supra.*

Undoubtedly, during the 50–year span of *Ashford v. Reese,* many attorneys, title companies, vendors, vendees, assignees, judgment debtors, and judgment creditors have relied in one fashion or another upon the doctrine of that case; and this despite the fact that we on numerous occasions have criticized that decision. *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958); *In re Horse Heaven Irrigation Dist.,* 19 Wn.2d 89, 91, 141 P.2d 400 (1943); *Cady v. Kerr,* 11 Wn.2d 1, 118 P.2d 182, 137 A.L.R. 713 (1941); *Culmback v. Stevens,* 158 Wash. 675, 291 P. 705 (1930). Nevertheless, we are satisfied that to permit unlimited retroactive effect of the overruling of *Ashford v. Reese* could conceivably produce in some instances unnecessary hardship and injustice.

Accordingly, we hold that our decision here will apply prospectively only and have effect only upon judgments entered after the remittitur goes down in this case.

For the reasons stated, the decision of the trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, and DOLLIVER, JJ., concur.

HAMILTON, J. (concurring in part, dissenting in part)—I concur in the overruling of *Ashford v. Reese,* 132 Wash. 639, 233 P. 29 (1925). I dissent, however, from the majority's rejection of the doctrine of equitable conversion.

The great majority of jurisdictions in this country recognize and follow the doctrine of equitable conversion in land sale contracts.[1] *Panushka v. Panushka,* 221 Ore. 145, 149–50, 349 P.2d 450 (1960), describes the operation of this equitable doctrine.

---

[1]*See Department of Revenue v. Baxter,* 486 P.2d 360 (Alas. 1971); *Lebrecht v. Beckett,* 96 Ariz. 389, 396 P.2d 13 (1964); *Snow Bros. Hardware Co. v. Ellis,* 180

An equitable conversion, therefore, takes place when a contract for the sale of real property becomes binding upon the parties. Thenceforth, the purchaser of the land is deemed the equitable owner thereof, and the seller is considered the owner of the purchase price. Upon the execution of the contract, the two contracting parties change positions. The purchaser's interest is "land", and the right and interest conferred by the contract upon the vendor is "personal property," i.e., ownership of the right to receive the purchase money. The naked legal title, which the vendor holds in trust as security for the payment of the purchase money, descends to his heirs to be held by them for the benefit of the purchaser, but the vendor has no *interest* in the *land* which is subject to descent. Upon the vendor's death, his interest in the purchase money passes to his personal representative as personalty, and is distributable among the deceased vendor's next of kin. In short, as a result of the equitable conversion, the vendor holds an encumbered legal title, charged with the equitable interest of the purchaser, which is subject to be defeated by the purchaser's performance of the contract but so long as the contract remains executory, no title to the land is conveyed in law to the purchaser.

With the wealth of authority applying the doctrine in the variety of circumstances that can arise in land transactions,

Ark. 238, 21 S.W.2d 162 (1929); *Strauss v. White,* 66 Ark. 167, 51 S.W. 64 (1899); *In re Estate of Reid,* 26 Cal. App. 2d 362, 79 P.2d 451 (1938); *Dwyer v. District Court,* 188 Colo. 41, 532 P.2d 725 (1975); *Eddington v. Turner,* 27 Del. Ch. 411, 38 A.2d 738, 155 A.L.R. 562 (1944); *Liberty Nat'l Bank v. Smoot,* 135 F. Supp. 654 (D.C. Cir. 1955); *Hull v. Maryland Cas. Co.,* 79 So. 2d 517 (Fla. 1954); *Shay v. Penrose,* 25 Ill. 2d 447, 185 N.E.2d 218 (1962); *Board of Comm'rs v. Midwest Associates, Inc.,* 144 Ind. App. 264, 245 N.E.2d 853 (1969); *H.L. Munn Lumber Co. v. Ames,* 176 N.W.2d 813 (Iowa 1970); *In re Estate of Snyder,* 199 Kan. 487, 430 P.2d 212 (1967); *C.H. Brown Banking Co. v. Stockton,* 107 Ky. 492, 54 S.W. 854 (1900); *Adams v. Harris,* 47 Miss. 144 (1872); *In re Estate of Briebach,* 132 Mont. 437, 318 P.2d 223 (1957); *Buford v. Dahlke,* 158 Neb. 39, 62 N.W.2d 252 (1954); *In re Estate of Seifert,* 109 N.H. 62, 242 A.2d 64 (1968); *Butterer v. Santoro,* 24 N.J. Super. 361, 94 A.2d 525 (1953); *Mutual Bldg. & Loan Ass'n v. Collins,* 85 N.M. 706, 516 P.2d 677 (1973); *Scott v. Jordan,* 235 N.C. 244, 69 S.E.2d 557 (1952); *State Life Ins. Co. v. State ex rel. Kehn,* 192 Okla. 271, 135 P.2d 965 (1942); *Bauer v. Hill,* 267 Pa. 559, 110 A. 346 (1920); *Capwell v. Spencer,* 48 R.I. 401, 137 A. 699 (1927); *Pinson v. Pinson,* 150 S.C. 368, 148 S.E. 211 (1929); *Southern Ice & Coal Co. v. Alley,* 127 Tenn. 173, 154 S.W. 536 (1912); *Lampman v. Sledge,* 502 S.W.2d 957 (Tex. Civ. App. 1973). In fact, my research discloses no jurisdiction which totally rejects this equitable doctrine.

our acceptance of it would lend some certainty in the real estate contract field now that *Ashford v. Reese, supra,* is no more. By rejecting the doctrine, I fear the majority has left a void which will cast attorneys, title companies, vendors, vendees, judgment creditors and debtors, and assignors and assignees upon a sea of uncertainty. To avoid these troubled waters, I would prefer to adopt the well-established doctrine of equitable conversion.

UTTER and HOROWITZ, JJ., concur with HAMILTON, J.