[No. 32196. Department One. February 13, 1953.]

LARS Q. ANDERSON, *a Minor, by Arthur B. Anderson, his Guardian ad Litem, et al., Appellants,* v. MINNIE A: REEDER *et al., Respondents.*[1]

*Evans, McLaren, Lane, Powell & Beeks* and *William T. Jacobson,* for appellants.

*N. A. Pearson* and *Kenneth M. Elliott,* for respondents.

[1]Reported in 253 P. (2d) 423.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action after the trial court had sustained a challenge to the sufficiency of the evidence at the close of the plaintiffs' case.

■ A challenge to the sufficiency of the evidence admits the truth of the plaintiff's evidence and all inferences reasonably to be drawn therefrom, and requires the evidence to be interpreted most strongly against the defendant, or in the light most favorable to the plaintiff. *Deffland v. Spokane Portland Cement Co.*, 26 Wn. (2d) 891, 176 P. (2d) 311.

Keeping the above rule in mind, we shall attempt to relate the facts which might have been considered by the jury if the case had been submitted to it. February 1, 1950, Minnie A. Reeder was the owner of a two and one-half story frame house in Seattle, which had been converted into an apartment house. Carroll, Hedlund & Associates, Inc., was the authorized rental and property agent and had power to rent, repair and keep the apartment house in a safe condition for tenants. In the basement was a laundry room for the convenience of tenants. The Andersons, with their son Lars, aged three years three months, lived in a second floor apartment, access to which was gained by an outside stairway. Two other tenants had small children. The children quite often played in the back yard.

Entrance to the laundry room was had by going down five concrete steps at the rear of the house. The door to the basement was warped because water accumulated at the foot of the stairs during the winter. The door was rather difficult to open and close. There was a hasp on the outside with a wooden peg, but the peg had disappeared some time before the accident. On the inside of the door was a sign stating: "Please Keep This Door Closed." However, it was usually slightly ajar. Mrs. Anderson testified that her only reason for ever closing the door was to help the clothes to dry, although she knew that Lars had on occasions played in the basement. There was also a sign in the basement

requesting that children not be allowed to play under the clothes on the line.

In the laundry were two wash tubs. To the left of the tubs was an electric outlet, about fifty-two inches above the floor. At that time, there were two wringer type washing machines in the laundry. One, a Thor, belonged to a tenant, and the other belonged to the caretaker. When the people were through using the washing machines, they would wrap the electric cord around the wringer and wheel the machine to the wall so it would be out of the way. When the Thor machine was plugged in, the motor would hum, but it was necessary to pull a lever to start the washing machine and another lever to start the wringer. The day before the accident, Mrs. Anderson had washed by hand at one of the tubs. Lars was with her.

About noon February 1, 1950, Lars went out to play. He played in front with his sled and then went to the back. About an hour later, his mother put on her coat and went out to look for him. She called and could hear him answer. She went into the basement and found him with his left arm in the wringer of the Thor machine. She took the rollers out and released his hand and arm. The wringer was not operating at the time. The cord was on the floor. Lars told her he had pulled the plug with his right hand.

Directly under the outlet was a kiddie car that belonged to one of the other children. Lars could not have plugged in the cord without standing on something. No explanation is given as to how the kiddie car happened to be directly underneath the outlet. The only reasonable inference is that it was moved there to stand on. It could not ordinarily be kept in that particular spot because it would be in the way of anyone using the tubs. The mother testified that Lars told her he was going to wring out a cloth for her. However, in a prior deposition she stated he had told her he was putting a stick through the wringer and his glove caught.

Mrs. Fiola, a tenant who lived directly above the laundry room, testified that she saw Lars coming down the

steps about noon; that about a half hour later she heard a washing machine being rolled across the basement floor; that later she heard a child screaming; and that the screaming continued for about twenty minutes. Later she saw Lars' mother carrying him upstairs.

Mrs. Anderson testified that Lars was not crying when she went down there; that he talked normally to her, but that he seemed dazed and in a state of shock when she got him upstairs.

Considering this evidence most favorably to the plaintiffs, the jury could have found that Lars got into the basement; pushed the washing machine over to the outlet; uncoiled the cord from around the wringer; placed the kiddie car under the outlet; stood on it and pushed in the plug; went back to the washing machine and pulled the lever for the wringer (there was no evidence that the washing machine itself was in operation); then, after his left hand and arm were caught in the wringer, pulled the plug with his right hand, thus stopping the operation of the wringer.

■ Where the owner of premises leases parts thereof to different tenants and expressly or impliedly reserves other parts thereof for the common use of such tenants, it is his duty to exercise reasonable care to keep safe such parts which he reserves for common use, and over which he has control. Tenants who use such portions reserved for common use are invitees of the landlord. In order to render him liable to a tenant injured while using such portions, however, it must appear that there was reasonable cause to apprehend such injury. 32 Am. Jur. 561, Landlord and Tenant, § 688.

■ A washing machine with a wringer attachment is not, of itself, a dangerous instrumentality. It took a combination of all of the intervening factors which this ingenious youngster brought into play to cause the accident.

■ Could respondents reasonably have anticipated that this injury would have happened to Lars? Neither the father nor the mother had any fear of any danger to children because the washing machines were in the basement.

We are unable to determine from the record that respondents could reasonably have foreseen or anticipated the events which transpired here, culminating in the injury. See *Sitarek v. Montgomery,* 32 Wn. (2d) 794, 203 P. (2d) 1062.

In *Atchison, Topeka & Sante Fe R. Co. v. Calhoun,* 213 U. S. 1, 53 L. Ed. 671, 29 S. Ct. 321, the United States supreme court said:

"It has been well said that 'if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock on Torts, 8th ed., 41."

██ The washing machine in question cannot be classed as an attractive nuisance. It does not come within element (1) as provided in *Schock v. Ringling Bros., etc.,* 5 Wn. (2d) 599, 105 P. (2d) 838:

"(1) the instrumentality or condition must be dangerous in itself, that is, it must be an agency which is likely to, or probably will, result in injury to those attracted by, and coming in contact with, it."

We can readily see that a washing machine left running and abandoned temporarily in a place where it would be attractive to young children might be an agency likely to result in injury to such children. But this machine, placed where it was, under the circumstances hereinbefore enumerated, was not dangerous in itself.

Appellant relies strongly on the case of *Powell v. Weiner,* 325 Ill. App. 697, 60 N. E. (2d) 646 (reported in full in 12 Negligence Cases 177). The facts in the cited case, as so reported, were quite similar to the facts in the instant case. There, a boy, four years ten months old, whose parents were tenants of an apartment house, went into the basement, inserted the wire connection in a socket, and caught

his hand in the wringer. The socket was within easy reach of the boy; also, the machines were operated by coin meters. If the allotted time had not been used, the machine would commence operating by merely plugging in the wire. It was held that the accident to the minor was just such an accident as might reasonably have been anticipated and foreseen by the landlord. The foreseeability of the accident was much more remote in the case at bar. We feel that the two cases are distinguishable on the facts. The decision in the Illinois case was that of an intermediate court, has never been cited with approval, and we do not choose to follow it.

The judgment is affirmed.

GRADY, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.