[No. 37231. Department Two. June 3, 1965.]

ERNEST R. YARBROUGH et al., *Respondents*, v. GEORGE P. SMITH et al., *Appellants*.*

*Witherspoon, Kelley, Davenport & Toole,* for appellants.

*Woods & Kumbera,* for respondents.

FINLEY, J.—The cause of action in this suit arises out of a very damaging fall down a back stairway of a residence which had been converted to an upstairs-downstairs duplex apartment. The defendants-appellants, George P. Smith and Arrilda P. Smith (husband and wife), are the owners of this duplex in Spokane. The Smiths rented the upper apartment to Mr. and Mrs. William Harris. On August 20, 1962, the mother and father of Mrs. Harris, the Yarbroughs (the plaintiffs-respondents), arrived for a visit with the Harris household. The Yarbroughs had left Potts Camp, Mississippi, about 5 p.m., on Friday, August 17, 1962. They

*Reported in 402 P.2d 667.

spent the first night of the trip at a motel; thereafter, they slept in their car. After driving over 2,100 miles, they arrived in Spokane on August 20, 1962, at about 10 a.m.

The Smiths gratuitously opened a spare room on the second floor of the duplex and allowed the Yarbroughs to stay in the room during their visit with their daughter and her husband. Mrs. Yarbrough got up late one night (around 2:30 in the morning) to go to the bathroom. On her way back to the bedroom, she opened the door into a back stairway and fell down the stairs, suffering the serious injuries complained of herein.

The building was 60 years old. Up until 1957, it was used as a triplex. There were two stairways to the second floor. The main apartment on the second floor was serviced by a flight of stairs from the front of the building. The spare room was serviced by stairs that opened to the back yard. When the spare room was used as a third apartment, it had a pullman stove, and the tenant had to share the bath with the tenant in the second floor, or main, apartment. The last use of this room as an apartment terminated on June 8, 1957, when the occupying tenant moved out. The next tenant in the main apartment rented the room as a nursery for $5 a month. This tenant left in January 1959. The pullman kitchen was removed in August of 1960, and the room was used as a storage room by the Smiths. In May 1961, a permit was issued by the city building inspector to alter the second floor to one unit. The second floor was remodeled to make the whole building a two-family dwelling consisting of two kitchens and two baths. The space in the spare room that formerly was occupied by the pullman kitchen was converted into a small washroom. A stairway leading to the attic space was altered and made into a hall connecting the present kitchen of the Harrises to the bathroom. The rear stairway itself, descending from the second floor, was not altered in any respect. After the remodeling, the Smiths leased the second floor to a tenant who occupied the second floor before the Harrises became tenants. The spare bedroom with the converted washroom

were not leased as a part of the second-floor apartment, and these rooms were kept locked by the Smiths as a store-room, to be opened only occasionally as a guest room.

The spare bedroom had two light fixtures in the ceiling and a light on the bed. The washroom was just off the bedroom, and it opened into the hall. The washroom had a ceiling light with a pull chain. The washroom door opened out into the hall. It was down the hall some 4 feet from the bathroom door. There was a hall light switch by the bathroom door. The stairway door, which also opened into the hall, was just past the bathroom door. The stair well had no artificial lighting except that provided by the light in the hall at the top of the stairs.

When the Yarbroughs arrived, their daughter showed them the spare bedroom. She opened the door to the stair-way and showed the stairs to her mother. The Yarbroughs retired earlier than the Harrises, and the record shows that the hall light was on. Mrs. Harris admits that she turned off the hall light when she retired for the night, but that she left the light on in the bathroom. Mrs. Yarbrough used the bathroom about four times during the day before her accident.

At 2:30 in the morning, Mrs. Yarbrough got out of bed to go to the bathroom. She did not turn on either of the two lights in the bedroom or the light in the washroom. She testified she could see light from the bathroom under the door in the washroom. She opened the washroom door into the hall, turned right, and walked a couple of steps down the hall, then turned left into the bathroom. When she left the bathroom, she left the bathroom light on and the bath-room door wide open. However, she did not turn on the hall light, and instead of turning right and walking back down to the washroom leading to the bedroom, Mrs. Yarbrough turned to her left and opened the back stairway door. The stairway door was very close to the bathroom; in fact, when opened, the door faced directly toward the bathroom, and the bathroom light reflected off the door into the stair well. Mrs. Yarbrough was left-handed, so

she had to pull the door open in front of her and then in effect walk around the door. She walked into the stairway and fell. Mrs. Yarbrough admitted that there was nothing wrong with the floor to cause her to trip. In fact, the floor had been covered recently with a light-colored asphalt tile, and the walls of the hall and bedroom had been painted a light ivory color. Mrs. Yarbrough testified that she thought she was walking into the washroom part of the bedroom, and she simply lost her balance.

The trial court overruled all motions by appellants for nonsuit and directed verdict, and submitted the case to the jury. The trial judge allowed the jury to consider and determine whether the appellants were required to have a light on in the rear stairway under the respondents' theory that the building was an apartment building and that certain ordinances required such lighting. The jury brought in a 10 to 2 general verdict in favor of the respondents for $33,386. The trial judge granted a new trial on the grounds that part of the instructions were incorrectly based on a city ordinance that was subsequently discovered to be inapplicable.

The main contention of the plaintiffs in this case is that the defendants were negligent as a matter of law for failure to comply with certain ordinances requiring apartment houses to maintain lights in halls, stairways and exits. The Spokane Fire Code requires lighting from sunset to sunrise in these areas, but it excepts dwellings which are defined as buildings "occupied exclusively for residential purposes and having not more than two apartments, . . . ." Spokane Fire Code § 1.21 (d) (1956). Since the fire code manifestly does not apply to this duplex, we need not reach the problem of whether its protection applies to a person injured in a nonfire accident.

The plaintiff also argued that the defendant violated the Spokane Building Code. Just before the instructions were given to the jury, counsel for the plaintiff presented an instruction that provided that the defendant would be negligent as a matter of law if failure to satisfy the following

section of the Uniform Building Code was a proximate cause of the accident:

Sec. 3312 (a) Exit Illumination. Exits shall be illuminated at all times with light having an intensity of at least one foot candle at floor level. Uniform Building Code § 3312 (a) (1958).

After the jury returned the verdict, the error was discovered. The Spokane City Council adopted the Uniform Building Code, but it also made certain deletions and additions to it. The Uniform Building Code, § 1404, reads as follows: "Stairs and exits shall be provided as specified in Chapter 33." This would include the above-quoted section, §3312 (a), as part of chapter 33. However, the Spokane city ordinance, Ordinance No. C15851 (1959), which adopted the Uniform Building Code, made the following amendment to § 1404: "Stairs shall be provided as specified in section 3305." Section 3305 only deals with the specifications as to the construction of stairs. Thus, there was no adoption of § 3312 (a), and, consequently, there was no section controlling the lighting of the stairs, and, therefore, no possible violation of the code.

Since none of the provisions of the building code pertains to issues in this case, we need not decide the additional arguments of the appellants that the code would not apply because the stairs were permissible construction under the prior building codes. Nor need we deal with the respondents' argument that the addition of a door at the head of the stairway was such an addition requiring that the stairs comply with the new building code.

■ The plaintiff also seeks to hold the defendant landlords under common law negligence. The plaintiff is either a tenant of the defendant by reason of the permission granted for the short stay in the guest room, or else as a guest of the Harrises, and thus is entitled to sue as a tenant. Comment, *Liability of Landlord and Tenant to Persons Injured on the Premises*, 39 Wash. L. Rev. 345, 351 (1964); *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092 (1913).

■ There is a difference in the landlord's duty, depending upon whether the stairway was part of the demised

premises rented to the Harrises or whether it was a common stairway. The evidence shows that the stairway was used by both the landlords (the Smiths) and the tenants (the Harrises). The Smiths used the stairway to get to the storage room on the second floor and to get to the attic on the third floor. The Harrises used the stairway to get to the back yard, and Mrs. Harris kept the staircase clean. Thus we conclude that the stairway was at least a common stairway, particularly under the control of the landlord. Consequently, he was under a duty to maintain the area in a reasonably safe condition. *Schedler v. Wagner*, 37 Wn.2d 612, 225 P.2d 213, 26 A.L.R.2d 604 (1950); *McGinnis v. Keylon*, 135 Wash. 588, 238 Pac. 631 (1925). However, since we find that the plaintiff was contributorily negligent as a matter of law, we need not decide whether a jury question was presented on the issue of whether it was negligent not to have had a light installed in the staircase and to have had the light burning during the night, which is the claim asserted by the plaintiff.

The facts are not in dispute. The accident occurred on the first night that Mrs. Yarbrough spent in the duplex. She was very fatigued after the very long, virtually non-stop, trip from Mississippi. She got up, and for some reason she decided she did not need to use any of the three lights in the spare room or the light in the hall. When she left the bathroom, she left the bathroom light burning and the door wide open. Instead of turning right and walking back down the hall to the spare room, she turned left. The door to the staircase was right next to the bathroom door. In fact, when the staircase door was open, it faced into the bathroom doorwell. The light from the bathroom would reflect off the staircase door into the stair well. Mrs. Yarbrough was left handed, so she had to pull the door open towards herself and then walk around it. The light from the bathroom would have reflected into the stair well if she had been looking. Mrs. Yarbrough knew the stairs were there; her daughter had pointed them out to her earlier in the day. It seems to us that reasonable minds could not

differ. There is only one conclusion derivable from these facts. Mrs. Yarbrough was walking about at night in an upstairs, unfamiliar hallway, in a strange house, in self-imposed poor lighting, and in a half-asleep state. Such conduct is sufficiently below the standard of care a person must exercise for his own protection that we are convinced that Mrs. Yarbrough was contributorily negligent as a matter of law.

The order of the trial court in granting a new trial is reversed, and the case is remanded for dismissal.

DONWORTH, WEAVER, OTT, and HAMILTON, JJ., concur.

October 20, 1965. Petition for rehearing denied.