[No. 2103-1. Division One. March 11, 1974.]

LULU OWENS GEISE, *Appellant,* v. WALLACE LEE *et al., Respondents.*

Owen J. Wales, for appellant.

Martin, Niemi, Burch & Mentele and Susan F. French, for respondents.

HOROWITZ, J.—Plaintiff, tenant of a mobile home park, appeals a judgment dismissing her claim based on defendants' alleged negligent failure to remove accumulated snow and ice from the common area in that park as a result of which she fell and was injured. The question raised concerns the duty of a mobile park owner in Washington to remove ice and snow accumulations from the common driveway area of the mobile home park under the landlord's control when the latter has not assumed that duty.

Lazy Wheels Mobile Home Park, located in Bothell, Washington, consists of approximately 100 spaces for mobile homes with a driveway between the rows of spaces for both pedestrian and vehicular use. No portion of the driveway is reserved for the exclusive use of either pedestrians or vehicles. Plaintiff, 61 years old, had been a tenant of the park since 1965. From January 23 to 26, 1972, a total of approximately 12 to 14 inches of snow accumulated on the common areas of the park. During the 6 days following January 26, alternately melting and freezing conditions, combined with passing vehicles, caused hummocks and ridges of ice from 4 to 6 inches in height to form throughout the common area of the park. On February 1, 1972, plaintiff, while carefully making her way to her sister's automobile, slipped and fell sustaining serious injuries. Defendant owners were aware of the dangerous accumulation and condition existing at the time. They had been directly

informed thereof by the plaintiff on several occasions. Defendants' manager had also been notified of the condition. Other mobile home tenants had slipped and at least one other tenant required hospitalization as a result of her fall. Defendants at no time agreed to undertake, nor did they undertake, the removal of accumulated ice and snow. Plaintiff sued defendants for injuries she sustained by defendants negligently failing to remove the accumulated ice and snow. Defendants timely moved for summary judgment, supported by an affidavit stating:

> I am the owner and proprietor of the trailer park where Mrs. Geise rented a space. In the January-February snow of 1972, I did not clean the street where she fell prior to her fall. I did not want to assume the responsibility of keeping the streets clear of snow and ice, and all the tenants knew it.

The court granted defendants' motion on the ground defendants had no duty to remove the accumulated ice and snow, having never undertaken the duty so to do. This appeal followed.

■■ The relationship between a mobile park owner and an occupant of a space in that park, pursuant to mutual arrangements for that purpose, is one of landlord and tenant. *Sunde v. Tollett*, 2 Wn. App. 640, 469 P.2d 212, 41 A.L.R.3d 319 (1970). At common law one who leases a portion of his premises but retains control over the approaches, common passageways, stairways and other areas to be used in common by the owners and tenants, has a duty to use reasonable care to keep the common areas in safe condition for use of the tenant in his enjoyment of the demised premises. *McCutcheon v. United Homes Corp.*, 79 Wn.2d 443, 486 P.2d 1093 (1971). The rule stated has long been followed in this state: *Yarbrough v. Smith*, 66 Wn.2d 365, 402 P.2d 667 (1965); *Feigenbaum v. Brink*, 66 Wn.2d 125, 401 P.2d 642 (1965); *Anderson v. Reeder*, 42 Wn.2d 45, 253 P.2d 423 (1953); *Schedler v. Wagner*, 37 Wn.2d 612, 225 P.2d 213, 230 P.2d 600, 26 A.L.R.2d 604 (1950); *Andrews v. McCutcheon*, 17 Wn.2d 340, 135 P.2d 459 (1943); Stoebuck,

*The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 291, 355 (1974).

The landlord's common-law duty with respect to common areas within his control is subject to several exceptions. *See generally* 1 H. Tiffany, *Real Property* § 109 (3d ed. 1939). One exception, known as the Massachusetts rule, adopted in a number of states including Washington, is that the landlord's duty does not extend to the removal of accumulations of ice and snow from the common areas unless the landlord has assumed the duty to do so. *Schedler v. Wagner, supra; Oerter v. Ziegler,* 59 Wash. 421, 109 P. 1058 (1910); *Cramer v. Van Parys,* 7 Wn. App. 584, 500 P.2d 1255 (1972). In *Cramer* the court approved the following jury instruction as a correct statement of the Washington law:

> You are instructed that a landlord has no duty to remove accumulations of snow and ice from common passageways unless you find that the landlord has, in fact, assumed this duty. In the event you so find, then the defendant would be liable for injuries proximately caused by his failure to use reasonable care in the discharge of such duty, taking into consideration all the surrounding facts and circumstances.

*Cramer* at 590-91.

When *Oerter* was decided in 1910, Massachusetts and some other states had already adopted the rule. *Oerter* states the rule it adopts represented the weight of authority, citing several cases, including *Woods v. Naumkeag Steam Cotton Co.,* 134 Mass. 357, 45 Am. Rep. 344 (1883). Since *Oerter,* the Massachusetts rule has been followed in a number of cases, some fairly recent. *Karp v. Mills,* 348 Mass. 768, 202 N.E.2d 244 (1964); *Kilbury v. McConnell,* 246 Ark. 528, 438 S.W.2d 692 (1969). Some other states have refused to follow the Massachusetts rule, treating it as providing an illogical exception to the general duty of the landlord to use reasonable care to keep the common areas in his control in safe condition. *Fuller v. Housing Authority,* 108 R.I. 770, 279 A.2d 438, 49 A.L.R.3d 382 (1971);

*Dubreuil v. Dubreuil,* 107 N.H. 519, 229 A.2d 338 (1967); *Strong v. Shefveland,* 249 Minn. 59, 81 N.W.2d 247 (1957). The New York cases have adopted an intermediate position. They hold that if the surface of the ice and snow on the common areas has formed into ridges or hummocks, then the landlord's duty of removal arises because the user is exposed to an unreasonable risk of harm. *See* Annot., 49 A.L.R.3d 387, 408-09 (1973). Neither Massachusetts nor Washington has adopted the New York rule, and *Oerter,* as noted, still expresses the Washington law. The cases supporting the respective rules discussed are collected in Annot., 49 A.L.R.3d 387 (1973).

■ Plaintiff recognizes she cannot prevail on appeal unless the *Oerter* rule is overruled, the new rule to be applied to her case. She invites this court to do so. She relies upon the cases that have rejected the Massachusetts rule, adopting instead what is sometimes called the Connecticut rule, *e.g., Fuller v. Housing Authority, supra.* Textwriters support the latter rule. *See* 2 F. Harper & F. James, *Law of Torts* § 27.17, at 1516-17 (1956); W. Prosser, *Law of Torts* § 63, at 407 (4th ed. 1971). *See* 49 Am. Jur. 2d *Landlord and Tenant* § 822 (1970); Annot., 49 A.L.R.3d 387, 400-04 (1973). In referring to the absence of a landlord's duty to remove ice and snow from common areas and the absence of any duty on the landlord's part to light common hallways, except under exceptional circumstances, 2 F. Harper & F. James, *Law of Torts,* at page 1517, states:

> Both these rulings involve the fixing of arbitrary standards of care in a way that is disappearing generally throughout the field of negligence.

Appellate courts, no doubt, have discretionary power to change or abandon prior legal doctrine and, to the extent necessary, to overrule prior decisions. As stated in *State ex rel. Madden v. PUD No. 1,* 83 Wn.2d 219, 221, 517 P.2d 585 (1973):

> There is no vested right in an existing law—common law or statutory—which precludes its change or repeal.

Unless the decision changing an existing rule holds otherwise, the change made in the opinion is retroactively applicable to the case in which the change is adopted. Some of the Washington cases illustrating retroactive overruling are set out in the margin.[1]

Retroactive overruling of an established rule may well result in substantial hardship to those who, in good faith, have relied on the rule. Such hardship may be minimized or largely eliminated if the overruling court has first suggested and thereby alerted the legal profession to the possibility the rule involved may be later reconsidered, e.g., K. Llewellyn, Common Law Tradition, Deciding Appeals 299-305 (1960). See Manion v. Pardee, 79 Wn.2d 1, 482 P.2d 767 (1971); Potts v. Amis, 62 Wn.2d 777, 787, 384 P.2d 825 (1963). A similar result may follow if, in the concerned state, there has been published from a responsible source a reasoned statement of dissatisfaction with the existing rule. Such publication may serve to put interested parties on notice the possibility of reconsideration is a real one and they should govern themselves accordingly.

An alternative method of obviating hardship to the concerned litigants resulting from their good faith reliance on the existing rule is to make the overruling prospective in operation, leaving the case under review to remain governed by the rule on which they have relied. State ex rel. Fin. Comm. v. Martin, 62 Wn.2d 645, 384 P.2d 833 (1963). See State v. Adams, 81 Wn.2d 468, 503 P.2d 111 (1972). Whether retroactive overruling should take place, whether hardship exists with respect to which a litigant should be protected, and what method of obviating hardship should

[1]Rosellini v. Banchero, 83 Wn.2d 268, 517 P.2d 955 (1974); Lyons v. Redding Constr. Co., 83 Wn.2d 86, 515 P.2d 821 (1973); Friend v. Cove Methodist Church, Inc., 65 Wn.2d 174, 396 P.2d 546 (1964); Potts v. Amis, 62 Wn.2d 777, 384 P.2d 825 (1963); Siragusa v. Swedish Hosp., 60 Wn.2d 310, 373 P.2d 767 (1962); State ex rel. Chelan Elec. Co. v. Superior Ct., 142 Wash. 270, 253 P. 115, 58 A.L.R. 779 (1927); Christianson v. Fayette R. Plumb, Inc., 7 Wn. App. 309, 499 P.2d 72 (1972). Cf. RCW 4.04.010. See Tully v. State, 4 Wn. App. 720, 723 n.2, 483 P.2d 1268 (1971).

be adopted, is determinable on a case by case basis as public interest may require.

In the instant case there is neither a showing nor argument the problem is so serious and the need for change so great and urgent that the 63-year-old *Oerter* rule must be immediately and retroactively overruled even though defendants apparently relied and based their defense thereon as they had a right to do. Thus, no published empirical study has been called to our attention and we know of none showing the doctrinal and economic consequences in this state of abandoning the *Oerter* rule in favor of either the Connecticut or New York rules.[2] It is true the existence of the power to change or abandon a rule of law does not depend upon the existence of a supporting published study of how the rule works. Such information may or may not be obtainable. Appellate courts, however, are properly influenced by such a study if applicable to the concerned state—especially if the case law concerned with the rule is divided—when called upon to determine how to exercise their power. *See State v. Reece,* 79 Wn.2d 453, 486 P.2d 1088 (1971), refusing to abandon the *M'Naghten's* rule in criminal insanity cases.

Such a study might show, for example, that during the years the *Oerter* rule has been in effect, the injuries in this state from unremoved ice and snow from common areas may have been so infrequent or minor as to make it unnecessary to risk the increase in rent that may result from adopting a more onerous rule of liability. On the other hand, if the uncompensated losses resulting from *Oerter* are a serious and continuing problem, then the abandon-

---

[2]*See* Steincipher, *Survey of Medical Professional Liability in Washington,* 39 Wash. L. Rev. 704 (1964); Comment, *Wage Garnishment in Washington—an Empirical Study,* 43 Wash. L. Rev. 743 (1968), relied on in *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 341, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969), which are illustrative of empirical studies. In determining whether to adopt a rule, such as the construction of a statute, it is proper to consider the consequences of doing so. *See Spokane County ex rel. Sullivan v. Glover,* 2 Wn.2d 162, 169, 97 P.2d 628 (1940); 50 Am. Jur. *Statutes* §§ 368, 370 (1944).

ment of the *Oerter* rule in favor of either the Connecticut or New York rule may be justified regardless of possible increased costs that may ultimately have to be borne by tenants.

Assuming arguendo the abandonment is desirable on doctrinal grounds, the lack of prior notice of possible reconsideration, the lack of sufficient relevant information from responsible sources concerning the desirability of change, the fact the Massachusetts rule followed in *Oerter* continues to receive support in cases arising since the Connecticut and New York rules have been adopted, argue against precipitous retroactive change or overruling. We are not here asked to make a ruling on a still open question in this state. We are asked to overrule long-established doctrine to which interested persons, including defendants, may well have adapted themselves as they had a right to do.

The case for justifiable reliance on the *Oerter* rule is buttressed by the fact there has been no prior published detailed criticism in this state of that rule that can fairly be said to have alerted the legal profession or interested persons in Washington that the *Oerter* rule could not safely be relied upon. The only published discussion of the rule in this state of which we are aware, aside from the court decisions noted, is Comment, *Liability of Landlord and Tenant to Persons Injured on the Premises*, 39 Wash. L. Rev. 345 (1964). The article contains a short discussion of the exception to the *Oerter* rule which imposes liability on a landlord if he has assumed the duty of removing ice and snow from common areas. The author suggests it should be sufficient to permit recovery by a tenant for the landlord's failure or refusal to remove ice and snow from common areas if the landlord has removed ice and snow in the past and the tenant has relied upon these past acts. The suggestion is then made, "[i]f the court is unwilling to go this far, the removal of the 'natural condition' exception would be desirable." The suggestion, although very briefly argued, apparently was not intended as a complete discussion. There is no reference to or evaluation of the case law

elsewhere, or of the economic need or consequences of abandoning the long-held *Oerter* rule; or the possible doctrinal consequences of abandonment with respect to other exceptions to the landlord's duty rule concerning common areas. *See* 1 H. Tiffany, *Real Property* § 109 (3d ed. 1939). It may be doubted if the suggestion, made in the manner described, would prevent justifiable reliance upon the *Oerter* rule. In fact, the *Oerter* rule was again followed about 8 months before plaintiff's accident by the trial court in *Cramer v. Van Parys,* its action being later affirmed by the Court of Appeals.

We believe the public interest will be better served if we do not act now on plaintiff's invitation to abandon the *Oerter* rule. At best the legal profession should be now alerted to the possibility the rule may have to be reconsidered when an appropriate opportunity arises to do so. *See* K. Llewellyn, *Common Law Tradition, Deciding Appeals* 299-305 (1960).

Affirmed.

FARRIS and JAMES, JJ., concur.
Petition for rehearing denied April 25, 1974.
Review granted by Supreme Court June 24, 1974.