## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67793-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES DENSMORE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 4, 2013 |
| | ) | |

SPEARMAN, A.C.J. – James Densmore appeals his convictions for burglary,

theft, and malicious mischief, arguing that the trial court erred in denying his

motion to dismiss the charges or suppress evidence because the State failed to

preserve surveillance video footage of the crime. He also contends that the

State failed to present sufficient evidence that he was one of the three men who

committed the crimes. We reject his arguments and affirm.

### FACTS

On February 7, 2009, three men walked into a Redmond neighborhood

pub, the Celtic Bayou. The pub owner, Benaissa Wahbi, did not recognize the

men and thought their behavior was suspicious, but Wahbi left the pub shortly

thereafter without telling anyone of his concerns. The bartender, Bryce Bentler,

served the men two beers and a soda and noticed that they did not stay long.

When Bentler took out the trash around 11:00 p.m., he saw the same three men sitting and smoking in a four-door sedan parked in front of a closed donut shop. Server Jessica Harmston noticed that the three men sat together quietly while in the pub and took turns walking over to the bathroom. When Harmston left after 11:00 p.m., she saw the same three men sitting in a dark blue four-door sedan parked at the end of a strip mall.

When Bentler arrived at the pub the next morning, he discovered that burglars had stolen money and caused significant property damage by cutting through drywall and prying open doors and a safe. Bentler called Wahbi and the police. Redmond Police Officer Jeremy Sandin met Wahbi at the pub. Sandin observed the damage inside the business and noticed that the door to a small electrical room adjoining the pub had also been pried open. Inside the electrical room, someone and cut a hole three feet in diameter in the drywall connecting the pub's bathroom and outdoor electrical room. Wahbi and Sandin then viewed a surveillance video of the burglary several times. Wahbi recognized the men in the burglary footage as the same three men who had been in the pub the night before. Bentler also watched the video and recognized one or two of the burglars as the men who had been at the pub the previous night.

When Sandin attempted to collect the video as evidence, Wahbi reported that it was saved on the hard drive of the computer but he did not know how to copy it to a CD. Sandin told Wahbi to save the video footage and advised him that another officer would attempt to obtain it. However, Wahbi later attempted to copy the video, damaged the hard drive, and lost the surveillance video.

Redmond Police Detective Brian Coats later took the hard drive back to the police department, but efforts to recover the video failed.

The police showed Wahbi and Bentler photomontages of suspects James Densmore, Byron Bowman, and Tyler Bowman. Wahbi did not choose any of the suspects, but Bentler identified all three suspects as the men who had been in the pub together on Saturday night.

The State charged Densmore with second degree burglary, first degree theft, and first degree malicious mischief. Prior to trial, Densmore moved to dismiss the charges or, in the alternative, suppress evidence of the surveillance video, arguing that the State's failure to preserve the video constituted a violation of his right to due process under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court filed the following summary of its rulings:

> 1. The defendant's Motion to Dismiss for Violation of Due Process was denied. Law enforcement was not involved in the unsuccessful efforts to make a copy of the surveillance video footage that ultimately led to the irreversible corruption of the video. There was good reason why responding officers did not seize the hard drive containing the footage during their initial response to the scene. Doing so would likely have disrupted the business, and furthermore, there was no reason to believe that the video would not be successfully copied.
> 2. The defendant's motion to suppress any reference to the destroyed video was denied. There was no evidence that the video was destroyed in bad faith.

Clerk's Papers (CP) at 74.

At trial, Wahbi, Sandin, and Bentler testified about what they recalled of the surveillance video. The jury was unable to reach a verdict and the trial court

3

declared a mistrial. After a second trial, the jury found Densmore guilty and the trial court imposed an exceptional sentence.

Densmore appeals.

## DISCUSSION

Under both the Washington Constitution and the United States Constitution, due process requires that the State preserve material exculpatory evidence. State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). To be considered "material exculpatory evidence," the exculpatory value of the evidence must have been apparent before it was destroyed, and the nature of the evidence leaves the defendant unable to obtain comparable evidence by other reasonable means. Id.; California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). If the evidence is only "potentially useful" to the defense, failure to preserve the evidence does not violate due process unless the defendant can show the State acted in bad faith. Wittenbarger, 124 Wn.2d at 477; Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).

Relying primarily on City of Seattle v. Fettig, 10 Wn. App. 733, 519 P.2d 1002 (1974), Densmore argues that because identity was the central point in dispute at the trial and because the surveillance video was crucial to that issue, its negligent destruction by the State violated his right to due process. In Fettig, this court reversed a conviction for driving while intoxicated where the police failed to preserve a videotape of the defendant performing field sobriety tests. Id. at 773-74. At Fettig's bench trial in municipal court, the trial judge viewed the

4

videotape. After the trial, the City negligently destroyed the tape. Id. At Fettig's trial de novo before a jury in superior court, he moved to dismiss the charges based on the destruction of the tape. He offered the testimony of the municipal court judge who had viewed the tape to prove that the tape was material and exculpatory. Id. at 774. Based on the judge's proffered testimony that the video "negated an impression of intoxication," we concluded that there was a reasonable probability that the destroyed video tape tended to rebut the police testimony while corroborating that of the defendant. Id. at 776. As such, the video tape was both material and exculpatory to the defendant and its negligent destruction by the City violated the defendant's right to due process.

In contrast to Fettig, Densmore claims only that the video was material to the central issue of identification and that it's availability would have been useful to him in more effectively challenging the witnesses' testimony about the video. But he does not claim that the surveillance video was exculpatory because it refuted inculpatory evidence offered by the State. In the absence of such a claim, Densmore must show that the State acted in bad faith by failing to preserve the evidence. He fails to do so.

Sandin testified that when Wahbi told him that he did not recall how to copy the video, he told Wahbi "just save it and another officer will . . . follow up and . . . hopefully obtain that video." Verbatim Report of Proceedings (VRP) 6/9/11 at 545. Wahbi tried to copy the video and corrupted his hard drive. Detective Coats attempted, but failed, to retrieve the video from the hard drive. This does not show that Wahbi was an agent of the State because he was not

5

acting at Sandin's direction when the video was destroyed. State v. Smith, 110 Wn.2d 658, 666, 756 P.2d 722 (1988) (In order to prove that a private individual was acting as a government agent,"[i]t must be shown that the State in some way 'instigated, encouraged, counseled, directed or controlled' the conduct of the private person.") (quoting, State v. Wolken, 103 Wn.2d 823, 830, 700 P.2d 319 (1985)). In addition, because the State was not involved in the tape's destruction, there can be no claim it was the result of improper motivation on the part of a state agent. State v. Groth, 163 Wn. App. 548, 555, 261 P.3d 183 (2011), review denied, 173 Wn.2d 1026, 272 P.3d 852 (2012). (In order to prove bad faith, a defendant must show that the destruction was "improperly motivated.") (quoting State v. Wittenberger, 124 Wn.2d 467, 478, 880 P.2d 517 (1994)). We affirm the trial court's denial of Densmore's motion to dismiss or suppress the video on due process grounds.

Densmore next claims that the State failed to present sufficient evidence of his identity as the perpetrator of the charged crimes to support his convictions. Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citing Johnson v. Louisiana, 406 U.S. 356, 362, 92 S.Ct. 1624-1625, 32 L.Ed.2d 152 (1972); State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). A claim of insufficiency admits the truth of the State's evidence, and all reasonable inferences from the evidence are drawn in favor of the State and interpreted most

strongly against the defendant. State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Circumstantial evidence and direct evidence are equally probative. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Wahbi testified that he recognized the three men on the surveillance video of the burglary as the same three men he saw in the pub Saturday night. Bentler identified Densmore and the Bowmans in photomontages as the three men he saw in the pub on Saturday night. There was testimony that the three men took turns walking to the bathroom and that entry to the pub had been gained through a hole in the bathroom wall. Bentler and Harmston also saw the three men in a dark four-door sedan outside the pub on Saturday night. The State presented evidence that Densmore owned a dark four-door sedan. The State also presented evidence that Densmore and the Bowmans were living in the same house where police found clothing and a small sledgehammer and pry bars covered with dust similar to drywall dust, as well as other tools consistent with burglary tools. While it is true that no witness identified Densmore or his car in court and the State did not present evidence directly linking the tools found in Densmore's house to the burglary at the pub, the circumstantial evidence presented by the State supports a reasonable inference that Densmore was one of the three men who went to the pub Saturday night and returned early Sunday

morning to commit the burglary. Sufficient evidence supports the convictions here.

In his statement of additional grounds for review, Densmore first claims that the trial court should have dismissed the case or excluded evidence of the surveillance video because Officer Sandin had constructive possession of the video when he watched it and his direction to Wahbi to save it for another officer constituted bad faith. But as discussed above, there is no credible evidence of bad faith in the record. We reject Densmore's conclusory assertions to the contrary.

Densmore next contends that the prosecutor committed misconduct by introducing ER 404(b) evidence specifically excluded in pretrial motions during the examination of Detective Dennis Montgomery. Prior to trial, the trial court denied the State's motion to allow the introduction of evidence of another burglary, occurring at Jay's Market in Lake Stevens on February 17, 2009, in which three suspects broke into a business after hours by making a hole through drywall and then cut open a safe, to show modus operandi. But a review of the record reveals that Detective Montgomery testified only about the items discovered in Densmore's house and described them as consistent with burglary tools and gear, some of which appeared to be covered with drywall dust. Because Densmore does not claim or indicate that Detective Montgomery testified that he was involved in any other burglary, crime, wrong or act in violation of the pretrial ruling, Densmore is not entitled to relief.

Densmore next contends that he received ineffective assistance of counsel because his attorney failed to (1) investigate the case prior to trial; (2) seek suppression of evidence recovered in an illegal search and seizure; and (3) report juror misconduct. We are not required to search the record to find support for these claims. RAP 10.10(c). To the extent Densmore relies on matters outside the record, a personal restraint petition is the appropriate means to raise such issues. State v. McFarland, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

In his fourth ground for relief, Densmore claims he was denied his right to be present at an omnibus hearing. Because no order or transcript for such an omnibus hearing appears in the record on appeal, we cannot review this claim.

Densmore next contends that the trial court erred by denying his motion for a new trial based on juror misconduct. In particular, Densmore reported that he had seen one of the jurors putting away a power cord, and claimed that the juror must have been using a laptop computer in violation of the court's order. The trial court denied the motion because the jurors were allowed to use computers when they were not in trial or deliberating and there was no "indication that there was anything improper the juror was doing." (VRP 8/4/11 at 620). Densmore claims that the trial court should have held a hearing to inquire what the juror was doing. But Densmore offers nothing in the record to support his pure speculation regarding the juror's actions. He is not entitled to relief.

In his sixth ground, Densmore claims for the first time on appeal that the State violated his right to due process by delaying the filing of charges for over a year while waiting for the outcome of a trial in Snohomish County. But to review

this claim, we must also consider the State's reasons for the delay, if any. <u>State v. Oppelt</u>, 172 Wn.2d 285, 257 P.3d 653 (2011) (to determine whether preaccusatorial delay violates due process, court balances prejudice to defendant against State's interests justifying delay). Here, because the claim was not raised below, there is no record of the State's reasons for the alleged delay. Thus, the record is insufficient for us to consider this issue and we decline to address it.

Finally, Densmore challenges the sufficiency of the State's evidence to prove burglary, arguing that no witness testified that he entered or remained unlawfully in a building. However, as discussed above, the State presented sufficient evidence to allow a reasonable jury to find beyond a reasonable doubt that Densmore was one of the three men who participated in the burglary.[1]

Affirmed.

Spelman, A.C.J.

WE CONCUR:

Cox, J.

---

[1] Densmore also contends cumulative error warrants reversal. However, given the disposition of the other issues, we reject this argument.

10