[No. 13379-9-I.   Division One.   May 21, 1986.]

JOHN J. CASTANZA, ET AL, *Appellants,* v. MILTON B. WAGNER, *Respondent.*

*Stephen G. Palken, Sorrel & Palken,* and *Kenneth H. Davidson,* for appellants.

*Ingrid W. Hansen* and *Betts, Patterson & Mines,* for respondent.

SCHOLFIELD, C.J.—John and Verna Castanza appeal the trial court's granting to Milton Wagner of an easement 60 feet wide through their property for ingress, egress and placement of utilities. We affirm in part and reverse in part.

## FACTS

This action concerns an easement running through property owned by the Castanzas in the Duvall area. The easement consists of a 1–lane road known as Brown Road, running from the county highway through the Castanza property to Cherry Creek. Wagner claims an easement 60 feet wide serving his property which lies immediately to the south of the Castanza property. Cherry Creek forms the northern boundary of the Wagner property and the southern boundary of the Castanza property.

In 1943, Faunce acquired property which included both the Castanza and the Wagner parcels. Pursuant to a written agreement with Faunce, H. L. Brown built a logging road through Faunce's property to his own. This road became known as Brown Road.

In 1945, Faunce granted to Wright (Brown's successor) a 99–year easement "for the use for all purposes of a certain road heretofore constructed by H. L. Brown". Exhibit 4. In 1945, Faunce conveyed his property to Holan. In 1951, Holan granted an easement over Brown Road to Daley, who owned property to the southeast. The easement was described as "over what is known as the Brown road". Exhibit 8. In 1955, Holan entered into a real estate contract to sell the land north of Cherry Creek (the Castanza land) to Westman and Best.[1] The contract stated the property

---

[1]That portion of the west half of the northeast quarter of Section 17, Town-

was subject to an

> easement of right of way for road purposes to property in same section lying south of the property sold.

Exhibit 6.

Several weeks later, Holan sold that portion of her land south of the creek (later the Wagner land) to McGovern and Copeland by real estate contract.[2] The contract granted an easement with

> [r]ight to use an existing bulldozed road over and across the following described property: Northwest quarter of northeast quarter of Section 17, Township 26 north, Range 7, East W.M., extending from creek to county road, which right of way shall be sixty feet in width and whose use will be for access road and utility purposes.

Exhibit 7.

In September 1955, Westman and Best (owners prior to the Castanzas) granted an easement to McGovern (Wagner's predecessor), his successors and assigns for:

> the right, privilege and authority to construct, improve, repair and maintain use of a certain road, which is known as the Brown Road . . .
>
> . . .
> The covenants herein contained shall run with the land
>
> . . .
> Reference is herein made to King County Auditor's Files No's 4130940 [Daley's easement] for further parti[c]ulars regarding the aforesaid road.

Exhibit 9.

Of the two real estate contracts, the first fulfillment deed was issued by Holan in September 1955 to McGovern and Copeland containing the same easement as described in their contract. The fulfillment deed to Westman and Best was issued by Holan's assignee, Osberg, in February 1956,

---

ship 26 north, Range 7 east W.M., lying south of the County Road and north of the center line of Cherry Creek.

[2]That portion of the west half of the northeast quarter of Section 17, Township 26 north, Range 7 east W.M., in King County, Washington, lying south of the center of Cherry Creek.

and contained the same easement language as the contract.

Wagner purchased the property lying south of the creek by real estate contract in 1979 from Pugh, which granted an easement as follows:

Easement recorded under Auditor's File No. 4122092.

Easement disclosed by instrument recorded under Auditor's File No. 3499704 [the Faunce to Wright easement].

Easement recorded under Auditor's File No. 4616410 [the Westman to McGovern easement].

Exhibit 15.

The statutory warranty deed issued to the Castanzas in 1979 showed the property subject to easements recorded as:

Nos. 3499704 [the Faunce to Wright easement], 4130940 [the 1951 easement from Holan to Daley], 4556040 [the easement contained in the Holan conveyance to Westman and Best] and 4616410 [the easement granted from Westman and Best to McGovern] . . .

Exhibit 16.

Since its construction, Brown Road has continued to be used for logging and access to parcels north and south of Cherry Creek. At all times material to the case, its width has varied between 12 and 16 feet. The road is connected across Cherry Creek by a bridge.

In the 1970's, the road was improved by cutting and resloping the bank above the road on a steep portion near Cherry Creek and planting ground cover to avoid silting the lake and harming the salmon run. These improvements were required by the State Fisheries Department before logging could commence.

In 1979, Wagner placed a prefabricated building on his property and began preparations for reforestation of the property. In the same year, he arranged for the installation of electrical and telephone service. In August 1980, Wagner had a confrontation with the Castanzas as he was rebuilding the bridge over Cherry Creek. The Castanzas disputed Wagner's right to use Brown Road. Subsequently, Wagner had utility lines installed underground down the center of

Brown Road.

The Castanzas filed an action to quiet title and for trespass against Wagner in April 1982, claiming that Wagner had no easement. After a 2–day trial, the court found in favor of Wagner, granting him an easement 60 feet wide along Brown Road for ingress, egress and utilities. The Castanzas appealed but now concede that Wagner has an easement for ingress and egress over Brown Road. Despite numerous assignments of error, the only issue presented on this appeal is the action of the trial court in granting Wagner a *60–foot* easement rather than confining the easement to the existing actual width of Brown Road as established by use. Before the trial court, the Castanzas abandoned their claim for an injunction compelling Wagner to dig up and remove the utilities placed underground down the center of Brown Road and have limited their claim in respect to utilities to the contention that Wagner has no right to hereafter install utilities across their property.

### Extent of Wagner's Easement by Grant

In 1955, Holan sold the Castanza land to Westman and Best by a real estate contract which was recorded in King County on March 29, 1955. That contract reserved only an "easement of right of way for road purposes to property in same section lying south of the property sold." Exhibit 6. Holan's attempted grant to McGovern and Copeland (Wagner's predecessors) in the real estate contract dated April 1, 1955, and recorded April 15, 1955, of an easement over the Castanza land 60 feet in width for access and utility purposes exceeded the ownership interest Holan had reserved in the real estate contract with Westman and Best. The existing Brown Road was no more than 16 feet wide at any point. There was no reference to an easement for utilities in the Westman–Best contract. In the contract with McGovern and Copeland, Holan tried to convey an ownership interest she no longer had. This effort proved to be a nullity because the Westman–Best contract was paid off and a fulfillment deed containing the same limited

easement as the contract was ultimately issued and recorded.

A purchaser under a real estate contract acquires a valid and subsisting interest in the property described in the contract and upon performance of the contract, has the right to have title to the property quieted in accordance with the terms of the contract. *Griffith v. Whittier*, 37 Wn.2d 351, 353, 223 P.2d 1062 (1950). *See also Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 781–82, 567 P.2d 631 (1977) and *Meltzer v. Wendell–West*, 7 Wn. App. 90, 497 P.2d 1348 (1972).

The recording of the Westman–Best real estate contract gave notice to all subsequent purchasers, including Wagner, of the limited extent to which an easement could be granted over the property described in that contract.

RCW 65.08.080, which was in effect from 1927 until repealed in 1984, provided in part:

> An executory contract for the sale or purchase of real property . . . when acknowledged . . . in the manner to entitle a conveyance to be recorded, may be recorded in the office of the recording officer of any county in which any of the real property to which it relates is situated, and when so recorded shall be notice to all persons of the rights of the vendee under the contract.

The trial court judgment giving Wagner an easement 60 feet wide must be reversed. Wagner's easement is for ingress and egress over the Brown Road as it existed in 1955.

The grant of easement in September 1955 from Westman and Best to McGovern does not contain language enlarging the easement. It did have the effect, however, of making it clear that the easement was confined to the existing Brown Road. The language in the real estate contract between Holan and Westman–Best did not confine the easement to Brown Road.

It is immaterial that the fulfillment deed to Wagner's predecessor was recorded prior to the fulfillment deed to the Castanzas' predecessor. This result follows from the

fact that the rights of the Castanzas and their predecessors were fixed in the recorded real estate contract and constructive notice given of the subject matter of that contract to Wagner's predecessor pursuant to RCW 65.08.080.

### RIGHT TO USE EASEMENT FOR UTILITY LINES

The language reserving an easement from the property sold to the Castanzas' predecessor limited the easement to "road purposes". Use of the easement for placement of utilities is not mentioned and Wagner cites no authority, and we know of none, which would permit the interpretation that "road purposes" includes the right to place utilities.

The easement granted Wagner's predecessor by Westman–Best, the Castanzas' predecessor, relates solely to the "use of a certain road, which is known as the Brown Road". Exhibit 9. There is no mention of a right to place utilities. These easements refer to a private road originally developed as a logging road and located in an undeveloped area. As previously stated herein, Wagner's rights can be no greater than the reservation from the contract with the Castanzas' predecessor and the easement from Westman–Best will permit.

Consultation with dictionaries and other references provides no basis for defining "road purposes" beyond a way established for travel of persons, animals and vehicles. Wagner did not have a legal right to place utilities along Brown Road. The Castanzas at first sought a mandatory injunction in the trial court to compel Wagner to remove the utilities buried along the course of Brown Road. The trial court held it would be "both unreasonable and inequitable" to issue such an injunction.

In *Arnold v. Melani*, 75 Wn.2d 143, 152, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968), the court held that the remedy of a mandatory injunction can be denied as oppressive where:

(1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently

locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

The trial court held in findings of fact 22, 23 and 25 that it would be inequitable to require Mr. Wagner to remove the utilities; that the utilities were installed in good faith under a reasonable belief in the propriety of said installation; and that to require removal of the utilities would provide very slight benefit to the Castanzas, but would result in severe damages to Wagner with an enormous disparity between the slight benefit to Castanza and the hardship to Wagner. These findings would appear to meet the requirements of *Arnold* and support the trial court's denial of a mandatory injunction. There is strong evidence to support the Castanzas' claim that Wagner took a calculated risk in locating the utilities along Brown Road. However, he did possess a deed which appeared to give him the right to do so. In light of that factor, we conclude that the trial court's findings of fact are supported by substantial evidence and that the trial court did not err in denying the Castanzas' claim for a mandatory injunction compelling Wagner to remove the utility lines from Brown Road. The lines as installed can remain in place. However, as previously stated, Wagner's contract and deed did not convey an easement permitting him to install utilities along the course of Brown Road.

The trial court judgment quieting title in Wagner to a 60–foot easement along the existing road known as Brown Road and giving Wagner the right to install utilities along Brown Road is reversed. Wagner's easement is limited to an easement for ingress and egress along the course and dimensions of Brown Road as it existed in 1955. The trial court judgment is otherwise affirmed.

WEBSTER, J., concurs.

WILLIAMS, J. (concurring)—I concur in the result. The "Brown Road" easement first appears in the record on March 29, 1955, when the real estate contract selling the servient estate to the Castanzas' predecessor was recorded, the easement being described as an:

easement of right of way for road purposes to property in same section lying south of the property sold.

It next appears on April 13, 1955, when the real estate contract selling the dominant estate to Wagner's predecessor was recorded, the easement being described as the:

[r]ight to use an existing bulldozed road over and across the following described property: Northwest quarter of northeast quarter of Section 17, Township 26 north, Range 7, East W.M., extending from creek to county road, which right of way shall be sixty feet in width and whose use will be for access road and utility purposes.

This latter description was erroneous because the owner, in selling the parcel to the Castanzas' predecessor, reserved from that sale only the "Brown Road," which was no more than 16 feet in width at any point. Being divested of ownership of the servient estate, the seller could not broaden the easement to 60 feet.

Although the Castanzas are not requesting that the utility lines already installed under Brown Road be removed, they do seek an order prohibiting the installation of additional utility lines. The grant of a right of way for "road purposes" does not authorize the owner of the dominant estate to install utility lines under the road. *See Gordon v. Hoy,* 211 Va. 539, 178 S.E.2d 495, 496–97 (1971); *Ampagoomian v. Atamian,* 323 Mass. 319, 81 N.E.2d 843, 845 (1948); *United States Pipe Line Co. v. Delaware, L. & W. R.R.,* 62 N.J.L. 254, 41 A. 759, 768 (1898). Nor does the Castanzas' acquiescence of the utilities in place justify amending the easement to permit additional utilities. An easement by express grant may not be expanded in scope beyond the terms of the grant, even though the expansion would not increase the burden on the servient estate.

*Brown v. Voss,* 105 Wn.2d 366, 371–72, 715 P.2d 514 (1986).

Reconsideration denied June 23 and July 15, 1986.

Review denied by Supreme Court October 7, 1986.