IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

WILLIAM D. WAHL, an individual, )
                          )       No. 70049-9-I
            Appellant,     )
                          )       DIVISION ONE
     v.                     )
                          )
MICHAEL L. AND HOROMI RITTER, )       UNPUBLISHED OPINION
Individually and on behalf of the marital )
Community comprised thereof, )
                          )
        Respondents.   )       FILED: May 12, 2014
_____ )

SPEARMAN, C.J. — This lawsuit concerns an easement dispute between the owners of two adjacent residential properties, William Wahl and Michael and Horomi Ritter. Wahl filed suit against the Ritters, seeking to quiet title and asserting claims and damages for trespass, timber trespass/waste, and assault. After a bench trial, the trial court interpreted the easement agreement in favor of the Ritters, dismissed all of Wahl's claims, and awarded attorney fees and costs to the Ritters under the small claims settlement statute, RCW 4.84.250 et seq. We affirm the trial court's dismissal of Wahl's claims, with the sole exception of his challenge to the number of boats that may be permanently moored at his dock. And because the record shows that the Ritters had notice prior to trial that

Wahl was seeking more than $10,000 in damages, we reverse the attorney fee award.

## FACTS

In 1976, William and Patricia Wahl[1] purchased a parcel of real property on Lake Washington in Bellevue. The Podls (predecessors in interest to the Ritters) owned the property directly upland from the Wahls. The Wahls' property was burdened by a 1955 recreational easement that benefited the Podl property by providing access to the waterfront. In 1978, while the Wahls' home was under construction, the Podls filed a lawsuit against the Wahls regarding the easement.

In October 1978, the Wahls and the Podls resolved the dispute by executing and recording a new easement agreement which replaced the 1955 easement. This easement agreement describes six easement areas (EA), including four "areas of mutual concern" (EA I, EA II, EA III, and EA IV) and two additional "common interest areas" (EA V and EA VI). Three of these easement areas are at issue in this lawsuit. EA I is located directly west of the Ritter residence on a steep slope. EA II runs along the north boundary of the Wahl property, connecting EA I with the waterfront. Its narrowest point is a 5-foot-wide strip adjacent to Wahl's circular driveway. EA III is a dock, which is accessed by land via EA II.

In 1999, the Ritters purchased the Podl property. Shortly thereafter, the Ritters discovered a leaking underground storage tank (UST) on their property. In

---

[1] Patricia Wahl no longer lives at the residence, and is not a party in the lawsuit.

2000, contractor TerraSolve removed the UST and began a large scale soil and groundwater remediation project. This required removal and replacement of landscaping and other improvements on portions of the Wahl and Ritter properties, including Wahl's driveway. In February 2004, the Washington State Department of Ecology refused to approve TerraSolve's remediation work. The Ritters' insurance company then retained a new contractor, Sound Environmental Strategies (SES), to resume the remediation project. A few months later, the Ritters had the area surveyed. A dispute then arose between the parties regarding the location of Wahl's driveway in relation to EA II. In August 2008, when Wahl was on vacation, the Ritters hired a contractor to remove the northernmost strip of Wahl's driveway which encroached on EA II. Wahl asserted that this action shortened the turning radius of his driveway and made it difficult to enter and exit his garage.

In July 2009, SES commenced large-scale cleanup and removal of the remaining contaminated soil. In May 2010, the permit for the remediation work was finalized. Contractors for the Ritters then installed sand, concrete pavers, bushes and lights in EA II; a retaining wall topped with a concrete patio and planters which encroach onto EA I; and five-foot wide stairs in EA I. Wahl objected to the location and configuration of many of these improvements. Wahl also revoked permission he had previously granted to the Ritters to attach a hydraulic boat lift and two jet ski lifts to the dock (EA III) and to run power and water from their home across EA I and II to operate the boat lifts.

Wahl filed a complaint against the Ritters on March 23, 2011 to quiet title and asserting claims and damages for trespass, timber trespass/waste, and assault. The Ritters denied these claims and also asked the court to quiet title. Following discovery, a bench trial commenced on September 12, 2012. On October 26, 2012, the trial court issued a memorandum decision denying all of Wahl's claims and requests for damages. On February 21, 2013, the trial court entered its findings of fact, conclusions of law, and order. The trial court subsequently granted the Ritters' request for a partial award of attorney fees and costs under the small claims statute, limited to the portion of fees and costs attributable to the damages claims. RCW 4.84.250 et seq. Wahl appeals.

<u>DISCUSSION</u>

"The interpretation of an easement is a mixed question of law and fact." <u>Sunnyside Valley Irr. Dist. v. Dickie</u>, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "What the original parties intended is a question of fact and the legal consequence of that intent is a question of law" (citing <u>Veach v. Culp</u>, 92 Wn.2d 570, 573, 599 P.2d 526 (1979)). <u>Sunnyside Valley</u>, 149 Wn.2d at 880. Findings of fact are reviewed under the substantial evidence standard, defined as a quantum of evidence sufficient to persuade a fair-minded person that the premise is true. <u>Wenatchee Sportsmen Ass'n v. Chelan Cnty.</u>, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Questions of law and conclusions of law are reviewed de novo. <u>Sunnyside Valley</u>, 149 Wn.2d at 880 (citing <u>Veach</u>, at 573).

In determining the scope of an easement created by express grant, the court looks to the original grant language to determine the permitted uses. Brown v. Voss, 105 Wn.2d 366, 371, 715 P.2d 514 (1986). "The intent of the original parties to an easement is determined from the deed as a whole." Sunnyside, 149 Wn.2d at 880 (citing Zorbrist v. Culp, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981)). "If the plain language is unambiguous, extrinsic evidence will not be considered." Sunnyside, 149 Wn.2d at 880 (citing City of Seattle v. Nazarenus, 60 Wn.2d 657, 665, 374 P.2d 1014 (1962)). "If ambiguity exists, extrinsic evidence is allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions." Sunnyside, 149 Wn.2d at 880 (citing Nazarenus, 60 Wn.2d at 665.

### Recreational Easement

Wahl argues that the trial court erred in concluding that EA II is a recreational easement path for pedestrian use only, thereby ignoring his right to use EA II for parking and navigating his circular driveway. The agreement regarding EA II provides:

> This Easement shall be for recreational use, including but not limited to access, gardening, lawns, rockeries, boating, picknicking, fishing, swimming, lawn sports, ingress and egress, or any other recreational use. *[Ritter] has priority use of Easement II.* It is intended that the use of this Easement does not unreasonably interfere with the privacy of [Wahl] in the enjoyment of his residence. [Ritter] shall have the responsibility and authority for the maintenance of landscaping, rockeries, etc. on Easement II in accordance with paragraph 6. Temporary storage by [Ritter] of small equipment used in the abovementioned recreational activities

is allowed so long as it does not detract from the aesthetics of the landscaping. It is understood that this use does not include storage of items such as boats, trailers, automobiles, etc. *[Wahl] shall have the right to the use of Easement II for ingress and egress* and landscape maintenance, *and such other non-recreational uses which do not unreasonably interfere with [Ritter's] priority use* of this easement. In the event of a conflict between *[Wahl and Ritter] over use of Easement II, [Ritter] shall have priority with the understanding that Easement II is [Ritter's] private area*, to the extent provided herein.

Trial Exhibit (Ex.) 1 at 5. (Emphasis added.)

The trial court concluded that "Easement Area II is a recreational easement," and that "[g]iven the pedestrian use of the easement path, which use could occur at any time, night or day, rain or shine, and in light of priorities granted to [Ritter's] use, and the identification of [Ritter's] use as a privacy right within the terms of EA II... and the express intent of the parties that the privacy of each is of 'paramount importance', together with the primacy of recreational use of EA II, this Court interprets EA II as providing that the use of the easement path in EA II cannot be used by motor vehicles for ingress or egress, or for parking for any period of time." Clerk Papers at 636-37. The court noted that Wahl presented evidence of difficulty in turning vehicles from the driveway into his garage without crossing EA II, but found "it is clear that such conflicts are resolved in favor of [Ritter's] scope of use, the recreational nature of the primary use, and [Ritter's] privacy rights." CP at 633.

Despite evidence that it is difficult to use Wahl's driveway without crossing EA II, we conclude that the trial court properly ruled that the Ritters' recreational use controls. The language in the easement agreement creates an extremely

broad grant of recreational use rights in EA II to the Ritters, limiting Wahl to non-recreational uses which do not unreasonably interfere with the Ritters' priority use. Wahl contends that his continuous use of EA II for turning vehicles, which he exercised without complaint from 1979-2004, indicates that the parties intended to allow this use. However, the easement agreement expressly provides that the Ritters have priority use in the event of a conflict. Wahl's reliance on York v. Cooper, 60 Wn.2d 283, 373 P.2d 493 (1962) is misplaced. In York, the court upheld the plaintiffs' right to drive and park on an easement that had been historically used for that purpose by the owners and occupants of both properties. Id. at 285. Here, the easement is expressly recreational, and only Wahl drove on it.

Wahl also argues that the trial court erred by ordering that the Ritters may prevent vehicles from going onto the easement path by installing concrete traffic barriers, because Paragraph 6 of the easement agreement provides that mutual consent is required to change the original landscaping plan, "which will not be unreasonably withheld." Trial Ex. 1 at 8. We conclude that Paragraph 6 does not control where, as here, the concrete barriers are being installed for safety purposes. Moreover, even if Paragraph 6 controlled, it would not be reasonable for Wahl to withhold consent under the circumstances.

### Patio and Stairs

Wahl argues that a narrow strip of the Ritters' new concrete patio and planter boxes (138 square feet in total) encroaches on EA I and constitutes a

trespass. The trial court found that the patio and planter boxes encroach on EA I, but concluded that the encroachment was permissible.

The agreement regarding EA I provides:

> *This Easement shall be* for ingress and egress (pedestrian only and shall not include parking or storage of anything), and *to permit view control by [Ritter] and safety of their property by installing and maintaining rockeries, like retaining devices[,] and steps and paths. [Ritter] shall have control over the landscaping and rockeries, etc., of Easement I* and shall be responsible to maintain the same in accordance with paragraph 6 in a manner mutually agreeable to [Ritter and Wahl] at [Ritter's] sole expense. Neither [Ritter] nor [Wahl] will construct any fence or gate over this Easement I without [Ritter's] prior written consent.

Trial Ex. 1 at 4-5. (Emphasis added.)

Wahl contends that the patio and planter boxes serve no safety purpose and therefore fall outside the scope of EA I. But Wahl does not challenge the location of the retaining wall that underlies the patio and planter boxes, even though it too encroaches on EA I. Rather, he appears to argue that nothing whatsoever should have been installed on top of the encroaching portion of the retaining wall. We disagree.

The plain language of EA I permits installation of "rockeries, similar retaining devices, and steps and paths," for both view control and safety purposes. CP at 634. It also gives Ritter "control over the landscaping and rockeries, etc." in EA I. The project manager who built Ritter's patio testified on cross examination that the patio and planter boxes could have been placed further back on the property so as not to fully cover the top surface of the retaining wall. However, the court found that doing so would

- 8 -

create "a flat open semi-circular area approximately 40' in length, with a width of 4' at its widest part and less than 1' at each end, which could conceivably be a safety hazard as the area is at the top edge of a steep slope." Id. The court also found that the encroachment of the patio does not interfere with any other use of EA I. These findings are supported by substantial evidence.

Wahl further contends that the patio and planters violate the easement agreement because EA I requires "mutual consent" for construction and maintenance of landscaping and rockeries, which he did not provide. The trial court concluded that Wahl's consent was not required, based on its finding that EA I expressly gives Ritter "control over the landscaping and rockeries" and that the reference in EA I regarding consent refers only to maintaining the landscaping in accordance with Paragraph 6. This finding is supported by substantial evidence.

Wahl also argued that the trial court erred in allowing the Ritters to violate EA I by expanding the width of the new steps from three feet to five feet. He contends that the original parties did not intend to allow future expansion of the original landscape design into new areas without Wahl's consent. Again we disagree. The trial court found "[t]here was no showing at trial that extending the width of the steps within EA I from 3 to 5 feet in any way interfered with or impaired use by [Wahl], and were done for safety reasons, all clearly within the

authority granted [Ritter] in EA I." CP at 628. This interpretation was proper, and supported by substantial evidence.

### Dock

Wahl argues that the trial court erred in permitting the Ritters to exceed the scope of EA III by mooring two jet skis at the dock, in addition to their boat. The agreement regarding EA III provides:

> *This Easement shall be* for recreational use, including but not limited to the use of the dock, for *the permanent mooring of not over two boats belonging to [Ritter], neither of which shall exceed 50 feet,* access, swimming, boating, fishing, ingress, egress or any other recreational use. [Ritter] shall have priority use of Easement III. It is intended that the use of this Easement does not unreasonably interfere with [Wahl's] privacy in the use and enjoyment of his residence. Maintenance of the New Dock to be built on Easement III … shall be the joint responsibility of [Wahl and Ritters]. [Wahl] shall have the right to use Easement III for ingress and egress, short-term or occasional boat moorage (on a space available basis) and maintenance so long as the same do not unreasonably interfere with [Ritter's] priority use of this easement. In the event of a conflict between [Wahl and Ritter] over use of Easement III, [Ritter] shall have priority with the understanding that Easement III is [Ritter's] private area, to the extent provided herein.

Trial Ex. 1 at 6. (Emphasis added.)

The trial court concluded that "two jet skis can be one boat for the purposes of the vessel limitation of EA III, in part due to their smaller size." CP at 638. This conclusion was based in part on the trial court's finding that the Bellevue Municipal Code counts one jet ski as half of a boat for storage purposes. Wahl contends that there is no such provision in the Bellevue Municipal Code. He is correct. The Ritters failed to provide a citation to the

alleged code provision, and our research revealed none.[2] The sole reference in the record in support of this finding is hearsay testimony from Ritter. This finding is not supported by substantial evidence. Accordingly, given clear language in the easement limiting Ritter's use to "not over two boats... neither of which shall exceed 50 feet," we conclude that the trial court erred in interpreting EA III to allow the Ritters to moor more than two boats (including jet skis) at the dock.[3]

Wahl also argues that the Ritters exceeded the scope of EA III by attaching boat lifts to the dock without his express agreement. He relies primarily on Paragraph 4 of the easement agreement, which provides that it was Wahl's responsibility to construct the dock, and that "[a]ny additional improvements to the New Dock shall be as mutually agreed by [Wahl] and [Ritter]." Trial Ex. 1 at 7. However, EA I expressly provides for the permanent mooring of two boats. The trial court found that although boat lifts are not expressly mentioned in the easement agreement, they are "a recognized aspect of mooring boats" and that EA I cannot be expected to specify all the details of mooring, given that new methods and accessories are constantly changing. CP at 635. The trial court also

---

[2] Following oral argument, counsel for the Ritters submitted "Respondent's Clarification Regarding Bellevue Municipal Code" confirming that Bellevue does not have a municipal code addressing whether a jet ski is equal to half a boat and requesting that we strike any briefing or oral argument representing the existence of such a code provision. We grant this request.

[3] Wahl also argues that EA III does not permit jet skis because they are not "boats." However, it is clear that jet skis are considered "boats" under state and local law. A "personal watercraft" is a "vessel of less than sixteen feet. . . ."; RCW 79A.60.010(22); BMC 12.04.020(T). A "vessel" is "every description of watercraft on the water." RCW 79A.60.010(29), BMC 12.04.020(AA). And a "boater" is "any person on a vessel. . . ." RCW 79A.60.010(3), BMC 12.04.020(D).

found that the boat lifts do not expand the scope of the moorage or interfere with any other use or activity of EA III. Given the broad grant of authority to the Ritters in EA III and the difficulty of accomplishing permanent moorage without the use of boat lifts, we conclude that the trial court's findings are supported by substantial evidence. Because we conclude that EA III limits the Ritters to two boats, it follows that they are limited to two boat lifts as well.

Wahl further argues that the Ritters exceeded the scope of the easement agreement by running electrical cords, water hoses, and power lines from their house across EA I and II to the dock. He contends that nothing in the easement agreement permits "utilities," only "recreational use." The trial court found this use permissible, finding that "there is no basis in EA II for limiting Owner B [the Ritters] from running power lines . . . ." CP at 634. The court also found that without access to water and power, which are necessary to operate the boat lifts, Ritter would be deprived of full use of EA III, which would be an absurd result. We agree, and conclude that these findings are supported by substantial evidence.

Wahl, citing Castanza v. Wagner, 43 Wn. App. 770, 719 P.2d 949 (1986), argues that the Ritters have no right to run power and water to EA III in the absence of an express grant. The Castanza court held that an easement of right of way for "road purposes" authorized ingress and egress, but in the absence of an express grant, did not include the right to place utility lines. Id. at 776-666. But here, unlike in Castanza, the easement agreement contains very broad language

in favor of the Ritters' recreational use, including the permanent mooring of boats.

## Attorney Fees

The trial court initially denied the Ritters' request for an award of attorney fees and costs in excess of $180,000 based on the small claims settlement statute, RCW 4.84.250 et seq. However, upon reconsideration, the trial court concluded:

> While the litigation in this case primarily involved a dispute over the interpretation of the scope and use of a written easement that does not contain an attorney-fee clause, Plaintiff, in addition to the petition for enforcement of the easement, included in his complaint a demand for damages of less than $10,000, which invokes RCW 4.84.250. Pre-trial litigation and trial focused almost, if not exclusively, on issues arising out of the interpretation of the written easement. As Defendants accurately point out, this court, following a bench trial, found that the damage claims were not supported by evidence at trial, which is accurate, though it was not because evidence was offered and rejected, but because, based on the court's recollection at this time, no evidence at all was presented in support of the damage claims.

CP at 1054.

Accordingly the trial court invited the Ritters to resubmit a fee petition limited to the hours attributable to defending against Wahl's damages claims. The Ritters did so, and the trial court issued an order awarding $22,288 in total reasonable attorneys' fees and costs.

We review the legal basis for an award of attorney's fees de novo. Hulbert v. Port of Everett, 159 Wn. App. 389, 407, 245 P.3d 779 (2011). The general rule is that each party in a civil action must bear its own fees and costs. Cosmopolitan

Engineering Group, Inc. v. Ondeo Degremont, Inc., 159 Wn.2d 292, 296, 149 P.3d 666 (2006). "A trial court may award attorney fees only where there is a contractual, statutory, or recognized equitable basis." Riss v. Angel, 80 Wn. App. 553, 563, 912 P.2d 1028 (1996).

RCW 4.84.250 et seq. authorizes a trial court to award attorney's fees to the prevailing party where the amount pleaded is $10,000 or less. The small claims settlement statute has "multiple purposes of encouraging out-of-court settlements, penalizing parties who unjustifiably bring or resist small claims, and enabling a party to pursue a meritorious small claim without seeing the award diminished by legal fees." Williams v. Tilaye, 174 Wn.2d 57, 62, 272 P.3d 235 (2012) (citing Beckmann v. Spokane Transit Auth., 107 Wn.2d 785, 788, 733 P.2d 96 (1987)).The defendant is deemed the prevailing party if the plaintiff recovers nothing or a sum not exceeding that offered by the defendant in settlement. RCW 4.84.270; Reynolds v. Hicks, 134 Wn.2d 491, 502, 951 P.2d 761 (1998).

The Ritters contend that they are entitled to a fee award under RCW 4.84.270 because, following requests for production directed to Wahl during discovery, his claims for actual damages at trial were less than $10,000 and he rejected their pretrial offer to settle for $9,900. Wahl citing Reynolds, argues that RCW 4.84.250 et seq. does not apply because he pleaded an open-ended

"award of treble damages caused by the wrongful acts of defendants in an amount to be proven at trial" rather than a specific amount.[4] CP at 1332.

In Reynolds, the Washington Supreme Court rejected the defendants' request for a fee award as the prevailing party under RCW 4.84.250 because "[n]o specific amount was pleaded in the complaint; rather, the amount was set to be proven at trial. Thus, the Plaintiffs did not limit their award and based on their claim for damages and relief could have received well above $10,000 in damages." Reynolds, 134 Wn.2d at 502. However, a defendant is entitled to attorney fees, even if the plaintiff did not plead an exact amount, if he or she had constructive knowledge that the amount of the claim was $10,000 or less. Schmerer v. Darcy, 80 Wn. App. 499, 510, 910 P.2d 498 (1996). Thus, the fact that Wahl did not expressly plead damages in excess of $10,000 is not fatal to the Ritters' claim for attorney fees. The question is whether the Ritters had notice prior to trial that Wahl's damages claims exceeded $10,000.

The Ritters insist that Wahl failed to articulate or disclose any actual damages prior to trial other than a $4,400 driveway bid, a $2,000 dock repair estimate, and a $659.32 repair estimate for alleged electrical damage, for a total of $7,059.32. The Ritters are incorrect. The record before us also includes a certified arborist's report finding that the value of Wahl's property decreased by

---

[4] RCW 4.24.630 (damage to land) and RCW 64.12.030 (timber trespass) allow treble damages.

$68,000 - $113,500 based on the alleged timber trespass,[5] and a professional land value market study reporting an estimated property value of $163 to $165 square feet, in support of Wahl's claim for land trespass based on the 138 square feet of encroaching patio and planter boxes in EA I. Counsel for the Ritters expressly acknowledged having received the arborist's damages report approximately two weeks prior to trial. Thus, the Ritters clearly had notice prior to trial that Wahl's damages claims exceeded $10,000. Moreover, there is no evidence in the record that Wahl retreated from his request for an award of treble damages in an amount to be proven at trial. Even if Wahl only submitted evidence of damages in the amount of $7,059.32, when tripled, this would be sufficient to exceed the threshold.

The Ritters appear to argue that any evidence of damages that was deemed inadmissible at trial does not count towards the $10,000 threshold. But the ultimate admissibility of the evidence has no bearing on the question of whether the Ritters were on notice that Wahl's damages claims exceeded $10,000. The record shows that they were. Accordingly, we hold that the trial court erred in awarding attorney fees to the Ritters under RCW 4.84.270, and we reverse the award.

---

[5] "The standard measure of damages for the loss of ornamental trees in actions brought pursuant to RCW 64.12.030 is either the restoration cost or the diminution in value of the affected property." Happy Bunch, LLC v. Grandview North, LLC, 142 Wn. App. 81, 91 n.3, 173 P.3d 959 (2007).

The Ritters request reasonable attorney fees and costs under RAP 18.1 and RCW 4.84.290.[6] "We may award attorney fees under RAP 18.1(a) if applicable law grants to a party the right to recover reasonable attorney fees and if the party requests the fees as prescribed by RAP 18.1." Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 493, 200 P.3d 683 (2009). Because RCW 4.84.250 et seq. has no applicability to this case, we decline the Ritters' request for an award of fees on appeal. We also deny Wahl's request for fees on appeal pursuant to RAP 18.1 and RCW 4.24.630(1) based on the location of the Ritters' concrete patio, as he is not the prevailing party.[7]

Affirmed and reversed.

_____
Spearman, C.J.

WE CONCUR:

_____
Dwyer, J.

_____
Cox, J.

---

[6] RCW 4.84.290 provides "if the prevailing party on appeal would be entitled to attorneys' fees under the provisions of RCW 4.84.250, the court deciding the appeal shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorneys' fees for the appeal."

[7] RCW 4.24.630(1) provides for an award of attorneys' fees and costs to the injured party in a claim for liability for damage to land and property.